## Burns Estate

*James C. Larrimer*, for accountant.
*Michael Hahalyak*, for removed administrator.

Cox, J., May 17, 1960.—Timothy J. Burns, a resident of Pittsburgh, died intestate in Pittsburgh on April 26, 1956. He was survived by seven adult children and two minor grandchildren, children of a deceased child. On April 30, 1956, letters of administration on the estate of Timothy J. Burns were granted to Edward M. Burns, a son of decedent. The administrator posted a surety bond of the New Amsterdam Casualty Company in the amount of $1,000.

The personal estate of decedent consisted of cash on deposit in two banks in the amount of $4,986.54. His real estate consisted of a house and lot inventoried at $5,000 and an interest in real estate of his deceased son, James M. Burns, inventoried at $100. The total inventoried value of his estate is $10,086.54.

Edward M. Burns, the administrator, had decedent's money in bank accounts transferred to estate accounts. He paid decedent's bills totaling $2,277.21 and fees of $500 each to himself and his attorney, Michael Hahalyak. The administrator and his attorney attempted to sell decedent's real estate, but were unsuccessful. The administrator abandoned the administration of decedent's estate and moved out of the State. His attorney, Michael Hahalyak, presented to this court the petition of Vincent T. Burns, a son of decedent, for the removal of the administrator. James C. Larrimer, Esq., presented the petition of Timothy P. Burns, a son of decedent for the removal of the administrator. Both petitions were presented to Boyle, P. J., on the same day and at or about the same time. A hearing was held by Boyle, P. J., who entered an order on October 20, 1958, removing the administrator and directing him to file an inventory and account.

On October 21, 1958, Timothy P. Burns was granted letters of administration d. b. n. on decedent's estate by the register of wills. Michael Hahalyak, attorney for the removed administrator, turned over to the ad-

ministrator d. b. n. the unexpended balance of money on deposit in the estate's account in the amount of $1,-709.33, $150 hand money retained by the removed administrator when a purchaser who had agreed to purchase decedent's real estate was unable to do so, and an inventory and account which Mr. Hahalyak had prepared but had been unable to file. The administrator d. b. n. filed an inventory. A real estate broker sold decedent's real estate for $5,200. The net proceeds received by the estate from this sale were $4,760.10. The administrator d. b. n. received $448.30, decedent's share of the proceeds from the sale of real estate belonging to the estate of James M. Burns. He also received interest on the estate's moneys on deposit in the amount of $155.87. The total of the estate's moneys received by the removed administrator, Edward M. Burns, and Timothy P. Burns, the administrator d. b. n. is $10,500.81.

The administrator d. b. n. filed an account. This account is incorrectly stated, for in it he accounts for all of the estate's moneys received and expended by both himself and Edward M. Burns, the removed administrator. He had neither the right nor the duty to account for Edward M. Burns' partial administration of decedent's estate. It was the duty of Edward M. Burns, as directed by the order of this court on his removal, or, if he failed to do so, it was the duty of his surety, to account for his partial administration of decedent's estate. The filing of his account could have been compelled by the institution of a proper procedure in this court. Since Michael Hahalyak, attorney for the removed administrator, had a complete record of all the estate's assets received by the removed administrator and expended by him, the removed administrator's surety would have had no difficulty in filing an account.

Michael Hahalyak was present at the audit of the

account of the administrator and attended and testified at the audit hearing. The representative of the New Amsterdam Casualty Company, the removed administrator's surety, was present at both the audit and the hearing. All parties agree that the expenditures set forth in the account of the administrator d. b. n. as having been made by the removed administrator were made by him, and that the $1,859.83 turned over by Mr. Hahalyak to the administrator d. b. n. is the entire unexpended balance of the estate's assets which came into the hands of the removed administrator.

Since we have all the necessary information relating to the removed administrator's administration of the decedent's estate, and it is imperative that the administration of this estate be concluded, this court has full authority to evaluate his partial administration of decedent's estate and to make whatever orders are required.

The administrator, prior to his removal, paid fees of $500 each to himself and his attorney, Mr. Hahalyak. In his petition for distribution, the administrator d. b. n. requests the court to allow him a fee of $250 and his attorney, James C. Larrimer, a fee of $750. The total of the fees charged and requested by the two sets of administrators and their attorneys, $2,000, is approximately 20 percent of the $10,500.81, assets of this estate. This is a patent overcharge.

There were no unusual problems involved in the administration of this estate. Since its assets comprised moneys on deposit in bank accounts, a house and lot, and an interest in real estate held by the estate of a deceased son of decedent, all that was done in the administration of this estate was the transfer of moneys on deposit to an estate account, the filing of an inventory, the payment of decedent's bills and administration expenses, the sale of decedent's real estate, the

collection of his share of the proceeds from the sale of real estate held by the estate of the deceased son and the filing and auditing of an account. Although each of the two sets of administrators and their attorneys partially administered decedent's estate, the routine nature of their respective partial administrations of the estate was such that their combined fees should not exceed the fee that would be allowed an administrator and his attorney who had fully administered the estate. In accordance with the accepted practice in this county, such an administrator would have been allowed a maximum fee of $525 and his attorney would have been allowed a fee of $525. Accordingly, a total attorney's fee of $525 will be allowed, which will be divided equally between the two attorneys, Michael Hahalyak and James C. Larrimer. In addition thereto, Mr. Hahalyak will be allowed an additional fee of $100 for the extra services performed by him after the disappearance of the removed administrator, and Mr. Larrimer will be allowed an extra fee of $200 for services performed by him in securing the removal of the administrator and the appointment of the administrator d. b. n. Mr. Hahalyak is directed to repay to the administrator d. b. n. the sum of $137.50, the amount of the $500 fee paid to him by the removed administrator which has been disallowed. The administrator d. b. n. will be allowed the fee of $250 requested by him. The removed administrator, by reason of his abandonment of the administration of decedent's estate and the extra expense which he has occasioned the estate thereby, is entitled to no compensation for services which he rendered as administrator. He will be surcharged $500, the fee which he paid to himself prior to his disappearance.

During his partial administration of decedent's estate, the removed administrator did not rent decedent's real estate, and, although he attempted to sell it, he

was unsuccessful. The administrator d. b. n. contends that it was the duty of the removed administrator to rent decedent's property and that he, therefore, should be surcharged the rent which he would have received had he rented it. He also contends that by reason of the property remaining idle, it greatly depreciated in value and the removed administrator should be surcharged the amount of this depreciation.

According to the testimony of Mr. Hahalyak, attorney for the removed administrator, following the appointment of the administrator he had the property appraised by a real estate broker and placed the property for sale with this broker and another broker. Neither was able to find a purchaser for the property at its appraised value. The broker who had made the original appraisement did find a purchaser for the property who was willing to pay $5,200 for it. A written agreement of sale was entered into and hand money was paid. The purchaser, however, was unable to finance the purchase and forfeited his hand money, one half of which was retained by the broker who arranged the sale and one half was retained by the estate, and paid by Mr. Hahalyak to the administrator d. b. n. According to the testimony, the real estate was in a neighborhood which was changing its status, and it was for that reason that the removed administrator had been unable to sell it. Since he anticipated an early sale of the real estate to purchasers who would desire to live in it, he did not rent it. Hindsight is better than foresight. Under all the circumstances in this case, and, in particular, the failure of the administrator d. b. n. to prove the rental value of the property and the amount of its depreciation, it is the opinion of this court that the removed administrator should not be surcharged.

The Household Finance Company, a creditor of Edward M. Burns, the removed administrator, instituted

an attachment execution in the court of common pleas of this county, filed interrogatories, and made the administrator d. b. n. a party to this proceeding. The distributive share of Edward M. Burns in this estate will be suspended from distribution until the attachment proceeding in the court of common pleas has been completed, and on its completion it will be paid to the attaching creditor.

Attached to the petition for distribution of the administrator d. b. n. is a written assignment of Betty Tedesco, a daughter of decedent, dated December 31, 1958, assigning her interest in decedent's estate to J. H. Lembersky, Esq., and directing the administrator d. b. n. to pay over to the assignee all her "right, title, and interest in and to the above entitled estate." At the audit hearing Mr. Lembersky testified that Betty Tedesco was a client, and that on December 13, 1957, he loaned her $500. In proof of this loan, he placed in evidence a canceled check dated December 13, 1957, made payable to Betty A. Tedesco, and endorsed by her, in the amount of $500, and a promissory note dated December 13, 1957, in which he is the payee and Betty A. Tedesco the maker, which was given to him as security for the payment of the loan.

The United States presented its claim to the entire distributive share of Betty Tedesco. It bases its claim on liens for Federal income tax deficiencies totalling $1,972.95 entered against Betty and Lawrence Tedesco on September 11, 1958. Since the lien was entered prior to the assignment and the assignee does not come within any of the exceptions set forth in section 6323 of the Internal Revenue Code of 1954, 26 U. S. C. A. §6323, the share payable to Betty Tedesco, being less than the liened unpaid taxes, shall be distributed to the Treasurer of the United States. See U. S. v. Acri, 348 U. S. 211; Filipowicz v. Rothensies, 43 F. Supp. 619.

### Decree of Distribution

And now, April 12, 1960, the account in this case having been filed and confirmed nisi and having been examined and audited by the court, upon consideration thereof it is decreed that the account be confirmed absolutely, and that the funds in the hands of the accountant, to wit $7,088.60, be paid in accordance with the schedule of distribution hereto attached and made part hereof unless exceptions are filed within 10 days.

. . .

### Final Decree

And now, May 17, 1960, upon further consideration of the foregoing case, it is ordered, adjudged, and decreed that the exceptions be dismissed and that the decree of this court entered on April 12, 1960, on the opinion of Cox, J., be affirmed.