## Browarsky Estate.

Argued October 6, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John J. Dean,* with him *Dean & Dean,* for appellants.

*Donald C. Bush* and *Harry Woodruff Turner,* with them *David M. Janavitz, Thomas N. Griggs,* and *Janavitz & Janavitz,* and *Griggs, Moreland, Blair & Anderson,* and *Kirkpatrick, Lockhart, Johnson & Hutchison,* for appellees.

OPINION BY MR. JUSTICE JONES, March 20, 1970:

Ike Browarsky died on April 19, 1954, leaving a will under the terms of which Dr. Lewis Sheppard and Dora Foster were named executors and trustees. The will provided for devises and bequests to, among others, Dr. Lewis Sheppard, Dora Foster, and Sadie Sheppard (Dr. Sheppard's mother, also known as Sadie Shapero Browarsky). The residue of the estate was left to the present appellants.

After a considerable amount of litigation, a final decree of distribution was entered April 20, 1967, to which decree the residuary beneficiaries filed exceptions designed to surcharge the co-executors, Dr. Sheppard and Dora Foster. These exceptions were dismissed by the then Orphans' Court of Allegheny County, sitting en banc, on May 31, 1967, and this Court affirmed that decree, per curiam, on January 3, 1968.[1]

Three attorneys served as counsel in opposition to the attempted surcharge of the executors, *i.e.*: David Janavitz, Esquire, who represented the estate and had held that position since testator's death in 1954; Thomas Griggs, Esquire, who represented Lewis Sheppard as co-executor, and had been retained in July of 1966 specifically to handle the surcharge litigation; and, John Frazer, Esquire, who represented Dora Foster in her capacity as co-executrix and had been previously retained by her to pursue certain claims she had, as an individual, against the estate. After the matter of the surcharge had been disposed of, the three at-

---

[1] *Browarsky Estate,* 428 Pa. 588, 236 A. 2d 522 (1968).

torneys petitioned the Orphans' Court for the allowance of their fees to be paid by the estate, as follows: David Janavitz—$2,000; Thomas Griggs—$7,800; John Frazer—$2,000. Because any payments by the estate would be drawn from the residue, the residuary legatees contested this petition for the allowance of fees. The lower court granted the petition, and the instant appeal followed.

We begin our consideration with an explanation of why it was appropriate for the attorneys for the executors to seek payment of their fees from the estate. The executors were placed in the position to be sued because of duties they had performed for the estate. That being the case, it would be unjust to require them personally to bear the reasonable costs of the defense of suits brought against them solely by reason of their positions as executors. "It is well established that whenever there is an unsuccessful attempt by a beneficiary to surcharge a fiduciary the latter is entitled to an allowance out of the estate to pay for counsel fees and necessary expenditures in defending himself against the attack [citing cases]." *Wormley Estate,* 359 Pa. 295, 300-01, 59 A. 2d 98, 100 (1948). *Accord: Coulter Estate,* 379 Pa. 209, 108 A. 2d 681 (1954). Thus, it is clear that the estate was obligated to pay the reasonable costs of defending against the attempted surcharge of the executors by the residuary beneficiaries, the present appellants.

The question presented to the court below involved the propriety of the *amount* of the fees requested. In *Fraiman Estate,* 408 Pa. 442, 445, 184 A. 2d 494, 495 (1962), we noted that the scope of our review, in cases such as that presently before us, is limited to a consideration of whether the lower court clearly abused its discretion. "In passing upon the amount of counsel fee we bear in mind the well settled principle that: 'supervision of the amount of compensation is peculiarly

within the discretion of the court below. Unless such discretion is clearly abused, the judgment will not be disturbed on appeal': *Faust Estate,* 364 Pa. 529, 530, 73 A. 2d 369."

The residuary beneficiaries have alleged that the three attorneys improperly allocated their time in the petition for the allowance of fees. Mr. Griggs has presented a bill for $7,800, representing 342.5 hours which were spent in defending Dr. Sheppard, as executor. Initially, we note that this is roughly a rate of $22 per hour, the *minimum* rate prescribed by the Bar Association in Allegheny County for 1966 and 1967. It has been claimed, however, that a large portion of these 342.5 hours was spent on matters which did not involve the defense against the surcharge attempt. There is *absolutely* no factual basis whatsoever which might support such an allegation.

The cause of this confusion is that, *pro forma,* Mr. Griggs has had three clients in this case, Dr. Sheppard as executor, Dr. Sheppard as an individual, and Sadie Sheppard as an individual. When this action first arose, it appeared that Dr. Sheppard and his mother might be individually brought into the suit. As a matter of caution, Mr. Griggs entered his appearance as their attorney, in addition to entering his appearance for Dr. Sheppard as executor. From that point, the matter is best clarified by Mr. Griggs' own testimony.[2] "At a later stage of the proceedings it appeared that Mr. Dean's efforts[3] were directed toward surcharging the Executors and, therefore, *we did nothing in the proceedings individually for Lewis A. Shepperd* [sic], *individually, nor for Sadie Shapero Browarsky* [sic]." (Emphasis supplied) In short, Mr. Griggs

---

[2] The residuary beneficiaries presented no evidence. Accordingly, all testimony presented by the appellees was entirely unrebutted.

[3] Mr. Dean is the attorney for the residuary beneficiaries.

and his associates spent 342.5 hours solely in defending Dr. Sheppard, as executor, and presented a bill at a rate which was approximately the *minimum* fee charged in Allegheny County at that time. There is utterly no merit to the contention that this fee should not be allowed because it represents time not properly billable to the estate.

John Frazer, attorney for the other executrix, Dora Foster, has presented a bill for $2,000, which represents 98 hours, or a rate of approximately $20 per hour (*below* the minimum fee rate). Mr. Frazer was first retained by Dora Foster on August 5, 1961, to handle claims which she, as an individual, had against the estate, based on two checks that had been given to her by the testator. When it became apparent that she might also be subjected to liability for a surcharge, due to her position as co-executrix, she chose to have Mr. Frazer protect her interests in that case also. Mr. Frazer and his associates had a total of 260 hours which they billed to Dora Foster's account, and 98 of these were allocated to work done for her as co-executrix. Since this testimony as to allocation has not been rebutted, and since no attempt was made to attack Mr. Frazer's credibility, we cannot find that the lower court abused its discretion in allowing this $2,000 fee.

David Janavitz had been representing the estate from its inception. When the surcharge matter arose, Mr. Griggs took over as the primary counsel for the defense of that action, with Mr. Frazer as co-counsel to aid in special questions applicable to the interests of Dora Foster, co-executrix. Quite naturally, Messrs. Griggs and Frazer relied heavily upon Mr. Janavitz' expertise *re* the highly complex history of the estate to that point. In this advisory capacity, Mr. Janavitz put in well over 100 hours and has petitioned for the allowance of a $2,000 fee, less than the minimum rate

referred to previously. We find the amount of such fee to be not at all excessive.

The appellants have raised a question about whether it was necessary for all three attorneys to be involved in this matter. Where the administration of an estate involves only *routine* matters, *Fraiman Estate*, 408 Pa. 442, 184 A. 2d 494 (1962), co-executors may not be permitted to double the legal fees to be paid by the estate simply by retaining two separate counsel who duplicate each other's efforts. See *Burns Estate*, 22 Pa. D. & C. 2d 201 (1960), *aff'd on opinion of lower court*, 401 Pa. 556, 165 A. 2d 379 (1960); Annot., 56 A.L.R. 2d 13, §§15(a), 33(c) (1957); 34 C.J.S. *Executors and Administrators* §872 (1942). In deciding whether a given situation was merely routine, a number of factors are to be considered. *LaRocca Estate*, 431 Pa. 542, 546, 246 A. 2d 337, 339 (1968); *Thompson Estate*, 426 Pa. 270, 277, 232 A. 2d 625, 628 (1967). The case at bar involves an estate which has been in and out of the courts for the past fifteen years. Resolution of the surcharge claim alone took almost one and one-half years. There was nothing routine about this estate and, accordingly, we can find no abuse of discretion on the part of the court below in the allowance of fees for these three attorneys.

Decree affirmed. Costs on the appellants.

Mr. Justice POMEROY took no part in the consideration or decision of this case.