## Cogan Estate

14

*Lee B. Lansberry,* for executor.

*Donald L. Toner,* for trustee.

*Sue N. Lang,* for objectors.

SATTERTHWAITE, *P. J.,* October 29, 1975—The first and final account of Industrial Valley Bank and Trust Company, executor of the estate of said decedent, was presented to the court for audit, confirmation and distribution of ascertained balances on February 3, 1975, as advertised according to law. Due proof of appropriate notice thereof to all parties legally interested in said estate appears in the record.

Said account has been examined and audited by the court. Balances for distribution shown thereby include principal in the amount of $82,018.37, composed of invested securities at $85,570.07, plus jewelry at $250, plus a commercial variable note at $12,000, all subject to cash due accountant of $15,-801.70; and income in the amount of $4,936.44 in cash. Said respective balances for distribution appear to have been correctly computed and stated on the accounting filed.

No additional receipts or disbursements since the accounting were suggested.

Pennsylvania transfer inheritance tax has been paid in full, and liability therefor on the appraisement filed on October 10, 1974, has been discharged, as per certificate of the register attached to the petition for adjudication.

The instant executor's account was called for audit contemporaneously with audit of the account of the within accountant as trustee under an inter

vivos deed of this decedent dated April 25, 1969. See No. 45,505-A. That account showed balances of $107,433.51 principal (in stocks, bonds and cash) and $2,828.88 income, all of which, upon decedent's death, had been distributed pursuant to the deed of trust to accountant itself as the executor of the estate, which distributions, as inventoried by accountant in the within decedent's estate, comprised substantially all of the assets herein accounted for. The trustee's account took no credits either for accountant's compensation as such or for terminal counsel fees. The within executor's account, however, requested approval of such charges respecting both capacities:

Donald L. Toner, Esq., counsel fees for the trustee accounting   $2,700

Lee B. Lansberry, Esq., counsel fees for the executor's account   $4,500

Industrial Valley Bank and Trust Co., compensation

—as trustee   $5,400

—as executor   $4,789

$17,389

The life beneficiary of the trust under decedent's will and the guardian ad litem on behalf of the remaindermen filed objections to these claimed credits, and an audit hearing was duly held thereon.

The objections must be sustained, not because of any disagreement with these respective charges had they related to entirely separate and independent matters, but rather because of the patent duplication of such credits under the circumstances herein appearing. The auditing judge does not agree with objectors that $5,400 fiduciary's commission, plus $5,400 counsel fee,

would have been excessive or improper on a $108,000 gross estate, even though both were fixed on a percentage basis, a mode of computation now specifically recognized for personal representatives (section 3537 of the Decedents, Estates and Fiduciaries Code of June 30, 1972, P.L. 508 (No. 164), 20 Pa. C.S. section 3537 as well as for trustees: (Section 7185(a) of the code supra, 20 Pa. C.S. section 7185(a)).

However, in the instant case, accountant cannot, in good conscience, be permitted significantly more than these charges merely because it had occasion, solely by reason of the circumstance of this one decedent's death, to handle and deal with practically the same assets in what legally were two different capacities but which actually involved only slightly more activity and responsibility than it would have had it been only one. As trustee, it had almost all of decedent's property already in hand when it took on the additional legal responsibility of collecting such assets as executor. By the same token, its duty to distribute upon termination under the trust deed involved no problems of ascertaining and paying over the same to any person or entity other than itself with ultimate responsibility by reason thereof only for administration and distribution under decedent's will in its capacity as executor.

Strangely, the auditing judge has neither found nor been referred to any precedent involving the exact situation herein presented. There are, however, decisions concerned with circumstances which were analagous. Thus, as a general rule, where co-executors of an estate were severally represented by independent counsel, the aggregate allowed out of the estate as fees to all should not

exceed the amount properly allowable if only one counsel had represented all co-fiduciaries: McCalla's Estate, 33 D. & C. 643 (1938); Davis' Estate, 54 D. & C. 216 (1945). The same principle was applied where multiple counsel were engaged even though only one fiduciary was involved, in the absence of extraordinary circumstances or unusual services: Fischer Estate, 1 Fiduc. Rep. 83 (1950); Williams Estate, 9 Fiduc. Rep. 681 (1959). So, too, where an executor discharged counsel upon the substantial completion of administration of the estate but before filing an account, and new counsel was retained solely for accounting and audit, only one fee was allowed for both counsel, the same to be allocated in proportion to the services performed: Erdman Estate, 96 Pitts. L. J. 345 (1947). Cf. Williamson Estate, 78 Montg. 85 (1960). And where an administrator, after performing some services, was removed and an administrator d. b. n. completed the administration, each represented by different counsel, it was held that the combined charges of all should not exceed the commissions and fees properly payable to one administrator and his attorney as though they alone had completely administered the estate: Burns Estate, 22 D. & C. 2d 201 (1960), affirmed per curiam, 401 Pa. 556, 165 A.2d 379 (1960), and cited with approval and distinguished in Browarsky Estate, 437 Pa. 282 263 A.2d 365 (1970), which was concerned with fees for multiple counsel where the executors were involved in complicated matters of more than mere routine.

In the instant case, as trustee under the inter vivos trust, accountant had taken $1,313.06 in income commissions (at a five percent rate) over the four and a half years life of the trust, as to which no

objection has been made. Accountant had originally received assets from decedent in 1969 valued and carried at $89,471.36, comprised of United States bonds, nine issues of common stock (six of which were still on hand at decedent's death), and certain checking and savings accounts. In 1973, decedent apparently sold her residence and added the net proceeds of $19,741.41 to the corpus of the trust. Over the life of the trust, accountant invested and reinvested, apparently routinely, principally in United States Treasury obligations with one purchase of a corporate bond and another of shares of stock. All of the securities and principal cash on hand at decedent's death were turned over to the executor's account without liquidation, as was the undistributed balance of income which had not been paid out to decedent or on her behalf in her lifetime. Neither the account nor the evidence at the hearing disclosed other than usual or routine demands upon accountant for its services as trustee.

Similarly, accountant's adminstration of the testamentary estate as executor appears from the record to have been equally uncomplicated. The only additions to the asset which it had turned over to itself from the trust account were a diamond ring, certain furniture and additional cash items. It sold the furniture through an auction house and has still on hand the diamond ring and the seven identical holdings of corporate stocks and one corporate bond which it had had as trustee. Its disbursements were routine: although it was required to file returns and pay both Pennsylvania inheritance tax and Federal estate tax, the record fails to show any unusual problems incident thereto.

If accountant chose to retain one counsel for purposes of the trust and another with respect to decedent's estate, that was its province. However, accountant cannot, under the circumstances herein disclosed, expect to be allowed much more than one aggregate counsel fee as a proper credit against what amounted as a practical matter to only one estate. Similarly, it can expect to receive as its own compensation for the combined services in both capacities not significantly more than if it had acted in only one. In the present case, the only real separate or additional duties and responsibilities resting upon accountant and respective counsel and due to the dual capacity circumstance were the preparation and approval of the respective accounts and the processing and presentation of the same to the court for audit. A nominal extra charge for this separate aspect must be recognized in determining the combined charges.

After taking this and all other factors into account, the auditing judge believes that fair and reasonable compensation for accountant in both capacities would be $5,500 and for both counsel would likewise be $5,500, to be allocated $1,800 to Mr. Toner and $3,700 to Mr. Lansberry. It is, accordingly, hereby so ordered and accountant shall restore to principal the difference between the aggregate of such compensation now so allowed and that credited in the account.

No other unpaid claims against the estate were presented.

No other questions for adjudication were stated in the petition for adjudication, nor were any apparent to the court from the record, except the following:

1. Items 3rd and 4th of decedent's will

bequeathed pecuniary legacies of $500 each to Harriet Cogan Sprowles and Mary Cogan. These have been paid in full, as per satisfactions of award attached to the petition for adjudication. The above-stated balances are net after credit for the payment of such legacies.

2. Item 2nd of the will bequeathed decedent's personal effects, jewelry and similar tangible property to her daughter, Ellen Cogan Strangeways. The only items inventoried in these categories included a diamond ring at $250 (presumably the "jewelry" included in the hereinabove stated principal) and furniture at $91.60 which the account shows was sold for $133.25. Said legatee would, accordingly, be entitled to $133.25 in cash, plus the ring, plus, of course, all accrued income.

3. Industrial Valley Bank and Trust Company was named trustee of the trust of decedent's residuary estate by Item 5th. It has by writing filed with the petition for adjudication renounced its appointment as trustee. A petition has been filed by Ellen Cogan Strangeways, life beneficiary, and by Erik Strangeways, Jr., individually and as duly appointed guardian ad litem for his minor brothers, remaindermen, seeking the appointment of Erik Strangeways as substituted trustee. The court, by order of even date herewith, has agreed and made such appointment, conditioned upon his furnishing bond in the amount of $170,000. It is here recorded that the court has made this appointment solely for the reason that the said Erik Strangeways has agreed to engage the services of a trust company as agent and investment advisor. It is understood, however, that Mr. Strangeways himself is the accountable fiduciary.

The net ascertained balances for distribution are

hereby awarded as suggested by the last paragraph of the petition for adjudication pursuant to the will of decedent, a copy thereof attached to the petition for adjudication being incorporated herein by reference.

A schedule of distribution in conformity to the within adjudication and to implement the foregoing awards shall be filed by accountant in due course.

The account is hereby confirmed, and it is ordered and decreed that Industrial Valley Bank and Trust Company, executor as aforesaid, shall make and pay the distributions herein awarded forthwith upon the absolute confirmation of the schedule of distribution herein directed to be filed.

And now, October 29, 1975, the within adjudication is directed to be filed and is hereby confirmed nisi.