J-S02031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF NEVA OESCHGER, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: WILLIAM OESCHGER | No. 1079 EDA 2015 |

Appeal from the Decree entered March 10, 2015
In the Court of Common Pleas of Delaware County
Orphans' Court at No: 685 of 2005

BEFORE: SHOGAN, LAZARUS, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 24, 2016**

William Oeschger ("Appellant") appeals *pro se* from the March 10, 2015 decree entered in the Orphans' Court Division of the Delaware County Court of Common Pleas, denying his exceptions to that court's adjudication dated November 10, 2014. The adjudication dismissed Appellant's objections to the account and proposed distribution of the estate of his mother, Neva Oeschger ("Decedent").[1] Following review, we affirm.

---

[1] Decedent was adjudicated an incapacitated person on December 19, 2005. F. Michael Friedman ("Friedman") was appointed the plenary guardian of the person and estate and continued in that capacity until Decedent's 2008 death. In 2009, Friedman filed a First and Final Account for the estate. Appellant filed objections, which the court dismissed by order dated October 11, 2012. An appeal was taken to this Court and, on July 31, 2013, we affirmed the trial court's order. *In re Estate of Neva Oeschger*, 2013 WL
*(Footnote Continued Next Page)*

Our summary of the factual and procedural background of the case is gleaned from our review of the record. From that review, we are aware that Decedent died testate on July 18, 2008. Her daughter, Beverly Lewis ("Lewis" or "Executrix"), was appointed executrix in accordance with the terms of Decedent's Will. On June 3, 2014, Executrix, through her counsel, filed her First and Final Account. On June 13, 2014, she filed a Second Amended Petition for Adjudication/Statement of Proposed Distribution. On July 7, 2014, Appellant filed objections to both filings.

By decree entered on the docket on November 6, 2014, the trial court approved the account and granted the petition for adjudication/proposed distribution. By adjudication dated November 10, 2014, the trial court dismissed Appellant's objections and confirmed and approved the account and the petition for adjudication/proposed distribution. Per the terms of the adjudication, the trial court awarded Appellant and Executrix 50% each of Decedent's estate in conformance with Decedent's Will and the Statement of Distribution.

On December 3, 2014, Appellant filed exceptions to the November 10, 2014 adjudication, listing 22 separate allegations of error and reserving the right to file supplemental exceptions. Appellant sought, *inter alia,* to vacate

_(Footnote Continued)_ ─────────────

11260425 (Pa. Super. July 31, 2013), *appeal denied*, 87 A.3d 321 (Table) (Pa. March 4, 2014). **See also** Appellant's Brief at 8-11.

the adjudication and stay distributions, and requested a new hearing. In response, counsel for the estate filed cross-exceptions. Following a hearing on January 21, 2015, the court entered a decree dated February 17, 2015 denying and dismissing the exceptions and cross-exceptions. This timely appeal followed.[2]

In response to the trial court's Rule 1925(b) order, Appellant filed a statement of errors complained of on appeal that included a preface and 30 alleged errors. The trial court issued its Rule 1925(a) opinion on May 26, 2015, addressing each of the alleged errors and finding them meritless.

On appeal to this Court, Appellant presents two issues for our consideration:

> A. Whether the lower court abused its discretion in denying a continuance where the Appellant had a documented medical emergency and the continuance would not have caused any prejudice to the estate?
>
> B. Whether the lower court erred in accepting the first and final account which included unreasonable additional fees to the guardian and excluded fees/reimbursements owed to the Appellant?

Appellant's Brief at 7.

---

[2] The February 17, 2015 decree was not simultaneously entered on the docket, prompting this Court to issue an order directing Appellant to praecipe the trial court prothonotary to enter the final decree on the trial court docket. The trial court docket reflects entry of the decree on March 10, 2015.

We begin by setting forth our standard of review. This Court has recognized:

> The standard of review is well settled and requires that we be deferential to the findings of the Orphans' Court. Specifically,
>
>> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Miller*, 18 A.3d 1163, 1169 (Pa. Super. 2011) (*en banc*) (brackets removed) (quoting *In re Ware*, 814 A.2d 725, 731 (Pa. Super. 2002)).

In his first issue, Appellant contends that the trial court abused its discretion by denying a continuance of the October 1, 2014 hearing despite medical issues involving Appellant's significant other, Carol Brown. He claims a continuance would not have caused prejudice to the estate. This issue was preserved in Paragraphs 5 through 8 of Appellant's 1925(b) statement.

This Court reviews a trial court's decision to grant or deny a continuance for an abuse of discretion. *Baysmore v. Brownstein*, 771 A.2d 54, 57 (Pa. Super. 2001). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have

abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will." *Id.* Matters of a continuance are not specifically addressed in the Orphans' Court Rules. Therefore, we review Appellant's claim in light of Pa.R.C.P. No. 216, which provides, in pertinent part:

**Rule 216. Grounds for Continuance**

(A)    The following are grounds for a continuance:

    (1)    Agreement of all parties or their attorneys, if approved by the Court;

    (2)    Illness of counsel of record, a material witness, or a party. If requested a certificate of a physician shall be furnished, stating that such illness will probably be of sufficient duration to prevent the ill person from participating in the trial;

    . . .

    (4)    Such special ground as may be allowed in the discretion of the court[.]

Pa.R.C.P. No. 216.

Although Appellant cites case law and the appropriate "abuse of discretion" standard, he does not cite any procedural rule, such as Rule 216, applicable to requesting a continuance. He simply contends the trial court abused its discretion because Appellant's appearance and testimony at the October 2014 hearing were essential and he was prejudiced because he and his "primary witness" were not present at the hearing. Appellant's Brief at 24. Thus, in essence, he is relying on the gist of Rule 216(A)(2) without

citing it. However, as reflected in the trial court's Rule 1925(a) opinion, Appellant's contentions are unsupported in the record. Further, his actions were not in compliance with Rule 216(C), which sets forth the procedure for requesting a continuance. In its opinion, the trial court explained:

Appellant[] complain[s] of his absence from the hearing . . . that occurred on October 1, 2014 and suggest[s] that his absence was for good cause and that he was denied a fair and impartial hearing.

On July 22, 2014, the [t]rial [c]ourt published a Decree scheduling a hearing of William Oeschger's Objections to occur on August 20, 2014 and continuing into August 21, 2014 and August 22, 2014, if necessary. In the same Decree all parties were advised that any motions for a continuance must be filed no later than August 6, 2014. William Oeschger filed a Motion for a Continuance on August 6, 2014 requesting a continuance citing as reasons for the continuance a pre-planned vacation; attempts to settle the litigation without the need for a court hearing and also indicating that critical witnesses ". . . may have difficulty attending[."] William Oeschger did not identify who were the critical witnesses and if[,] in fact, they could not attend the hearing because of a conflict with their professional or personal calendars. Nevertheless, by Decree dated August 12, 2014, the [t]rial [c]ourt granted William Oeschger's request for a continuance and scheduled the hearing to commence on September 23, 2014 and continuing into September 24, 2014, if necessary. Again all parties were advised that any motion for a continuance of the September dates must be filed on or before August 23, 2014.

Thereafter, William Oeschger commenced to conduct ex parte conversations with [the trial court] by e-mail on August 25, 2014, September 23, 2014, September 29, 2014 and September 30, 2015. In each of the e-mails, William Oeschger's complaint was the scheduled hearing date established by the [t]rial [c]ourt for the hearing on his objections. Despite[] this [c]ourt's one response which was addressed to all parties indicating that the [t]rial [c]ourt did not grant relief in response to e-mail communication and was transmitted on August 25, 2014, William Oeschger continually ignored the [t]rial [c]ourt's

- 6 -

admonishments on the only acceptable manner in which to obtain relief by continuance.

While the [t]rial [j]udge was on vacation and out of the office, William Oeschger contacted chambers and insisted that the September 23, 2014 date be continued because his significant other was having a medical procedure on September 24, 2014 and had to attend to pre-admission matters on September 23, 2014. In a faxed letter to chambers William Oeschger suggested that his significant other would be unavailable to attend the September 23 and September 24 hearings and she would be unavailable as a witness because of the medical matter. William Oeschger did not explain what relevance or competence that his significant other might present as a witness in the correspondence. The [t]rial [c]ourt upon receiving this information from his chambers postponed the hearing scheduled for September 23, 2014 and scheduled it to occur on October 1, 2014.

Thereafter, William Oeschger bombarded the [t]rial [c]ourt with e-mails on September 18, 23 and 29 asking for a further postponement of the hearing on his objections. The [t]rial [c]ourt chose to ignore these improper and inappropriate forms of ex parte communications and proceeded with the hearing on October 1, 2014. William Oeschger did not attend the hearing on his Objections on October 1, 2014 preferring to assume that the [t]rial [c]ourt's silence with regard to his repeated e-mails indicated that the [t]rial [c]ourt had postponed the October 1, 2014 hearing date.

Pa.R.C.P. 216(C) established the appropriate method for obtaining a continuance and William Oeschger failed to follow that prescription despite being so advised by the [t]rial [c]ourt in its Decrees dated July 22, 2014 and August 12, 2014. Additionally, the decision whether to grant or deny a request for a continuance rests within the sound discretion of the [t]rial [c]ourt and that decision will not be disturbed unless there is an abuse of discretion on the part of the [t]rial [c]ourt.

William Oeschger's claim for appellate relief on these grounds is completely without merit.

. . .

- 7 -

[With regard to his significant other's medical issues,] William Oeschger presented no evidence of record on the length or seriousness of surgery nor did he admit evidence of any Surgeon's directive. William Oeschger's own decision to absent himself from the October 1, 2014 hearing was the sole reason that William Oeschger did not participate at the October 1, 2014 hearing.

. . .

William Oeschger has never demonstrated whether Carol F. Brown would have been a competent witness or whether the content of her testimony would have been relevant.

Trial Court Opinion, 5/26/15, at 4-6 (citation omitted). **See also id.** at 1-2.

We agree with the trial court's disposition of the continuance issue. Appellant failed to follow the appropriate methods for seeking a continuance despite instruction from the trial court on the proper procedure. Clearly, *ex parte* communications with the trial court are not an acceptable substitute for an extension request that complies with Pa.R.C.P. 216. Appellant's suggestion that "[u]rgent requests for continuance . . . are normally accepted ex parte practice," Appellant's Reply Brief at 4, is simply wrong. Appellant's failure to comply with the rules is not saved by his assertion that he is *pro se* and lacks a legal staff to prepare formal continuances. **Id.** *Pro se* status generally confers no special benefit upon a party. **See, e.g., Commonwealth v. Lyons**, 833 A.2d 245, 251–52 (Pa. Super. 2003). Appellant's first issue fails for lack of merit.

In his second issue, Appellant argues the trial court erred in accepting the first and final account because, he contends, it included "unreasonable

additional fees to the guardian and excluded fees/reimbursements owed to the Appellant." Appellant's Brief at 7. Appellant's assertions were preserved in, *inter alia*, Paragraphs 12 through 29 of his Rule 1925(b) statement.

In his brief, Appellant provides examples of the "salient misappropriations of Estate assets" including:

> [T]he Executrix sold the real estate and its contents for less than the court approved amount; removed personal property from the real estate without notice; failed to credit the Appellant for $10,000.00 for down payment; failed to account for loss and damage; failed to credit that Appellant for out of pocket expenses for the sale of the property; allowing the sister's attorney to be paid from the estate while the Appellant has represented himself pro-se or has paid his previous attorney directly; failed to credit the Appellant for storage costs and moving expenses; approved expenses that were not presented in open court; [and] failed to compensate the Appellant for the role as executor of his father's estate.

Appellant's Brief at 35.

Appellant's second issue lacks merit. As Lewis and Friedman (collectively "Appellees") correctly state in their joint brief, "[i]t is well established that whenever there is an unsuccessful attempt by a beneficiary to surcharge a fiduciary the latter is entitled to an allowance out of the estate to pay for counsel fees and necessary expenditures in defending himself against the attack." Appellees' Brief at 11 (quoting ***Estate of Browarsky***, 263 A.2d 365, 366 (Pa. 1970) (additional citations omitted)).

Appellant suggests that he is being "punished for protecting the assets of the Estate." Appellant's Brief at 27. That is not the case. As Appellees counter, "[s]trictly speaking, it is a claim for additional compensation by a

fiduciary for having had to defend a first and final account and incur attorney's fees and costs in that defense." Appellees' Brief at 11. A review of some of the alleged "salient misappropriations" illustrates this point.

With regard to the real estate, which is the subject of the first five of Appellant's enumerated "misappropriations," the trial court explained it initially denied Lewis' request for declaratory relief seeking to nullify the agreement of sale for the real estate and gave Appellant an extension of time to settle on the property. Trial Court Opinion, 5/26/15, at 6. Appellant failed to settle within the prescribed time. Therefore, the trial court declared the agreement of sale a nullity. *Id.* "[Appellant] unsuccessfully appealed. All issues concerning the real estate . . . and [Appellant's] feeble attempts to purchase same have been litigated by [Appellant] and have been appealed unsuccessfully by [Appellant.]" *Id.* at 6-7. Further, because Appellant breached the agreement of sale for the real estate, the $10,000 down payment became an estate asset as liquidated damages. As for any claims regarding Appellant's possessions, the trial court properly noted that Appellant never filed a single claim against the estate, instead raising the claims for the first time on appeal. *Id.* at 7. Therefore, those claims must be denied.

With regard to Appellant's claim for attorney fees for his service as executor for his father's estate, the trial court observed:

> This ground is completely without merit since this is a claim that
> should have been brought against the estate of Fred H.

- 10 -

Oeschger.  It is not properly brought against the estate of [Decedent] since [Appellant] was not the personal representative of [Decedent's] estate.  It is interesting to note that [Appellant] as Executor for the Estate of his father, Fred H. Oeschger filed an inheritance tax return indicating no assets in the estate of Fred H. Oeschger since as [Appellant] claimed on August 31, 2005 one hundred percent of the estate of Fred H. Oeschger was distributable upon Fred H. Oeschger['s] death to his wife, [Decedent].  It is remarkable to the [t]rial [c]ourt that [Appellant] would brazenly claim that he earned [] $20,000.00 from [an] estate that had no assets.

*Id.* at 10.

With regard to Appellant's second issue, we defer to the findings of the trial court.  *In re Estate of Miller*, 18 A.3d at 1169.  Our review leads us to conclude that the record is free from legal error and that the trial court's factual findings are supported by the evidence.  We find no basis for disturbing the trial court's decree denying Appellant's exceptions to the First and Final Account or, more particularly, with its findings regarding fees or reimbursements necessitated by Appellant's actions.  Appellant's second issue fails for lack of merit.

Decree affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2016