J-A01022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF ANITA M. MOON, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: KEITH MOON, ALEXIS HANNAH MOON AND TARA STACI MOON | : : : : : : | No. 1801 EDA 2018 |

Appeal from the Adjudication Entered May 25, 2018
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s):  No. 2013-E0537

BEFORE:  OTT, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 15, 2019**

Keith Moon, Alexis Hannah Moon, and Tara Staci Moon (Appellants) appeal from the Adjudication[1] entered May 25, 2018, in the Court of Common Pleas of Bucks County.  The orphans' court's Adjudication of the Second and Final Account of First National Bank of Newtown (FBN), Executor of the Estate of Anita M. Moon, Deceased (Estate), confirmed the Account and overruled the objections of Sheryl Moon and Appellants that sought reimbursement from the Estate for attorney fees and costs.[2]  Based upon the following, we affirm on the basis of the orphans' court's well-reasoned opinion.

The orphans' court has set forth the background of this case in its opinion, and therefore we need not discuss it here.  ***See*** Orphans' Court

---

[1] The orphans' court's decision was an Adjudication.  ***See*** Pa.O.C.R. 2.9.

[2] Sheryl Moon has not filed an appeal.

Opinion, 8/10/2018, at 1-5. The sole question raised in this appeal is framed

by Appellants, as follows:

> Whether Keith, who retained legal counsel to challenge the validity of changes to the structure of certain of the decedent's assets that removed those assets from her probate estate, and who was successful in returning assets to the Estate, thereby creating a fund for the benefit of the Estate as a whole, is entitled to recover his attorneys' fees and costs from the Estate?

Appellants' Brief at 3.[3]

> The principles that guide our review of this claim are well settled:

> The general rule is that each party to adversary litigation is required to pay his or her own counsel fees. In the absence of a statute allowing counsel fees, recovery of such fees will be permitted only in exceptional circumstances. One of the exceptional situations in which counsel fees may be recovered is where the work of counsel has created a fund for the benefit of many. This rule was stated by the Supreme Court of the United States in **The Boeing Co. v. Van Gemert**, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), as follows:

>> "[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole . . . . The common-fund doctrine reflects the traditional practice in courts of equity . . . and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees . . . . The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." (Citations omitted).

> **Id.** at 478, 100 S.Ct. at 749, 62 L.Ed.2d at 681-682.

---

[3] Appellants timely complied with the order of the orphans' court to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

It is fundamental that an attorney seeking compensation from an estate has the burden of establishing facts which show that he or she is entitled to such compensation. The allowance or disallowance of counsel fees rests generally in the judgment of the auditing judge, and his or her findings of fact, approved by the court en banc and supported by competent evidence, are binding on appeal. The judgment of the auditing judge regarding the allowance or disallowance of counsel fees will not be interfered with except for abuse of discretion or, as some cases express it, palpable error.

*Estate of Wanamaker*, 460 A.2d 824, 825-26 (Pa. Super. 1983) (most citations omitted).

The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*In re LaRocca Estate*, 246 A.2d 337, 339 (Pa. 1968).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable C. Theodore Fritsch, Jr., we conclude Appellants' issue warrants no relief. Further, the orphans' court's opinion cogently discusses the question presented herein. *See* Orphans' Court Opinion, 8/10/2018, at 5-7 (finding: Appellants' settlement with Sheryl Moon did not benefit the Estate as a whole by a sum of over one million dollars since Sheryl Moon and Appellants were the sole beneficiaries and the beneficiaries' agreement that Sheryl Moon would pay

Appellants $550,000.00 to bring an end to the litigation benefitted no beneficiaries aside from Appellants; the practical impact of the settlement reached by Sheryl Moon and Appellants was a direct payment to Appellants for Appellants' sole benefit; Appellants' unsuccessful surcharge claim against FBN depleted the Estate of $135,281.82, the sum paid to FBN from the Estate by way of settlement; and, finally, by overruling both Sheryl Moon and Appellants' objections to the Second and Final Account, additional monies remained in the Estate to be distributed equally, per the decedent's intent under the will, to both Sheryl Moon and Appellants).  We agree with the orphans' court's analysis and conclude no further elaboration is warranted. Accordingly, we affirm on the basis of the orphans' court's opinion.[4]

Adjudication affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/15/19

---

[4] In the event of further proceedings, the parties are directed to attach a copy of the orphans' court's August 10, 2018, opinion to this memorandum.

- 4 -

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

| | | |
|---|---|---|
| In re: ESTATE OF ANITA M. MOON, Deceased | : : : : | No. 2013-0537 |

## OPINION

Appellants, Keith Moon, Alexis Hannah Moon and Tara Staci Moon, (hereinafter collectively referred to as "Appellants"), have filed an appeal to the Superior Court of Pennsylvania from this Court's May 25, 2018 Adjudication of the Second and Final Account of the First National Bank & Trust Company of Newtown (hereinafter "Adjudication"). In the Adjudication, we confirmed the Account. We also dismissed Appellants' objections seeking the reimbursement of counsel fees they incurred with respect to creating a purported common fund for the benefit of the estate as a whole. This Opinion is filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## BACKGROUND

Anita M. Moon (hereinafter "Decedent"), a resident of Bucks County, Pennsylvania, died testate on May 22, 2010. The Decedent was survived by her three children: Sheryl Moon, Keith Moon, and Sharon Moon Thom. Decedent left a Last Will and Testament dated June 20, 2006 (hereinafter the "Will"). Pursuant to the Will, First National Bank of Newtown (hereinafter "FNB") was named executor of Decedent's estate. The Will provided that Sheryl Moon would receive all of Decedent's tangible personal property and 50% of the residue; Keith Moon would receive 25% of the residue, and Keith Moon's daughters, Alexis Hannah Moon and Tara Staci Moon, would each receive 12.5% of the residue to be held in trust.

On December 4, 2015, FNB filed a First and Partial Account. On February 2, 2015, Appellants filed Objections to the First and Partial Account (hereinafter "First Objections"). In the First Objections, Appellants alleged, *inter alia*, that FNB did not collect all of the non-probate assets of Decedent. The First Objections also asserted that Sheryl Moon improperly received assets which

1

belonged to the estate. Moreover, the First Objections alleged that FNB ultimately refused to pursue litigation to recover alleged non-probate assets from Sheryl Moon and therefore FNB should be surcharged.

On November 18, 2015, FNB filed a Motion for Summary Judgment seeking, *inter alia*, the dismissal of Appellants' request for surcharge against FNB. The parties thereafter resolved this issue by way of settlement. On December 18, 2015, Sheryl Moon filed a Motion for Summary Judgment seeking to have Appellants' First Objections dismissed. On April 6, 2016, this Court denied Sheryl Moon's Motion for Summary Judgment in all respects except for one issue that Appellants conceded was without merit.

In April 2017, the parties reached three separate settlement agreements. With regard to the first and second settlement agreements, Sheryl Moon and Appellants each agreed to withdraw all claims for surcharge against FNB. With regard to the third settlement agreement, Appellants and Sheryl Moon resolved outstanding issues with regard to the non-probate asset claims. Pursuant to this settlement agreement, Sheryl Moon agreed to pay Appellants $550,000.00. FNB was also required to file a Second and Final Account.

On June 29, 2017, FNB filed the Second and Final Account. On July 5, 2017, the Petition for Adjudication/Statement of Proposed Distribution with respect to the Second and Final Account was filed. On August 7, 2017, both Sheryl Moon and Appellants filed objections to the Second and Final Account. The primary issue raised by the parties concerned whether the estate should reimburse the parties for the legal fees and costs they incurred over the course of the litigation regarding the estate. With respect to the Appellants' objections, the primary contention they advanced was that through the settlement they reached with Sheryl Moon, they in essence were responsible for the return of $1,100,000.00 to the estate thereby creating a common fund for the benefit of the estate as a whole. In doing so, Appellants allege that from the purported common fund, they collected $550,000.00 as 50% beneficiaries. In her objections to the Second and Final Account, the primary contention

2

advanced by Sheryl Moon was that the legal fees incurred were a result of litigation efforts which sought to preserve estate funds and defend the actions taken by Decedent. Moreover, Sheryl Moon argued that she engaged in successful litigation efforts because her Motion for Summary Judgment was granted in part.

On May 25, 2018, we issued our Adjudication with respect to the Second and Final Account. In the Adjudication, we confirmed the Account and overruled both Sheryl Moon and Appellants' objections seeking reimbursement from the estate of attorneys fees and costs they incurred with respect to litigation.

On June 19, 2018, Appellants filed a Notice of Appeal to the Pennsylvania Superior Court from this Court's May 25, 2018 Adjudication overruling Appellants' objections to the Second and Final Account. Sheryl Moon did not appeal this Court's Decision denying her request for counsel fees. On July 12, 2018, Appellants filed their Concise Statement of Matters Complained of on Appeal (hereinafter "Concise Statement" or "Rule 1925(b) Statement"). Appellants' Concise Statement was not specifically enumerated. Rather, Appellants' Concise Statement sets forth the issues complained of on appeal in memorandum format. In the interest of brevity, we excerpt Appellants' allegations of error as stated in their Concise Statement, below:.

> This Honorable Court erred as a matter of law and abused its discretion when it issued its Adjudication, which confirmed the Second and Final Account as stated and found as a factual matter that Appellants and Sheryl "entered into a settlement agreement with regard to the non-probate asset claims which remained outstanding. Pursuant to the settlement agreement, Sheryl Moon agreed to directly pay Keith Moon $550,000." (Finding of Fact No. 13). The Court erroneously failed to conclude that Appellants' Objections resulted in the return of non-probate assets, which had been transferred directly to Sheryl personally, to the Estate and that the settlement was the practical effectuation of the proper distribution of those recovered Estate assets to the remaining beneficiaries of the Estate. To find otherwise was to completely disregard the nature of Appellants' Objections and to elevate form entirely over substance.
>
> This Honorable Court further erred when it concluded that "We do not perceive, however, that when Sheryl Moon paid Keith Moon approximately $550,000.00 this circumstance constituted the creation of a common fund for all estate beneficiaries. The monies received from Sheryl Moon were not recovered to benefit all beneficiaries but rather were recovered for the sole benefit of objectants,

3

Keith Moon and his daughters." That conclusion was an error of law or an abuse of judicial discretion because it was not supported by the record or by Appellants' Objections, which sought to return assets to the Estate. Appellants had no legal right to recover from Sheryl directly, nor did they file any objections or bring any other litigation to that effect. To the contrary, all of Appellants' efforts were designed and structured to return assets to the Estate. Indeed legal counsel for FNB, Michael J. Saile, Esquire, testified that the $550,000 in settlement funds that Appellants received were "intended to be a payment to them as beneficiaries of her mother's estate." (N.T., April 17, 2018, p. 28). That conclusion was never disputed, nor was that evidence contradicted.

This Honorable Court also erred as a matter of law and, indeed, compounded its fundamental error in concluding that Appellants "brought an unsuccessful surcharge claim against FNB", that the "litigation did not positively impact the estate's assets", and that "[u]ltimately, [Appellant]s litigation efforts resulted in depleting the Estate of $135,281.82, this sum paid to FNB by way of settlement with respect to the expenses and fees incurred by FNB pursuant to its participation in litigation with regard to the estate's administration." Again, the Court erred as a matter of law or abused its discretion when it failed to understand, appreciate or find that the litigation of Appellants' Objections to the First and Partial Account was solely instituted and presented to invalidate the improper conversion of the decedent's financial assets that she had intended to pass through the Estate into non-probate assets that transferred exclusively to Sheryl upon the decedent's death. The Court erroneously failed to realize and conclude that the successful resolution of Appellants' Objections could only result in the return of assets to the decedent's Estate and not directly to Appellants. Because the litigation of Appellants' Objections resulted in the settlement by which the Estate as a whole benefited, with Appellants together and Sheryl individually each effectively receiving $550,000.00 as the residuary beneficiaries of the Estate, the litigation was successful, and Appellants' actions not only did not deplete the Estate in any respect, but, instead, enhanced and increased the Estate by almost $1 million, even after the payment of FNB's litigation costs.

This Honorable Court erred in failing to conclude that, because the actions of Appellants' counsel created a fund for the benefit of the Estate as a whole Appellants were entitled to reimbursement from the Estate for the counsel fees they incurred in the recovery of those assets. Prior judicial precedent established these fundamental principles of fairness and equity. For the Court to conclude that the efforts of Appellants' counsel were exclusively for the benefit of Appellants, it necessarily and fundamentally had to have failed to comprehend the nature of Appellants' Objections and that Appellants' only legal avenue for relief was to litigate for the benefit of the Estate as a whole. The Court further erred as a matter of law or abused its discretion in concluding that the settlement only benefited Appellants, as the Court failed to appreciate that Appellants' recovery was in their capacity as residuary beneficiaries of the Estate and erroneously focused only upon the funds that Appellants received, while disregarding the fact that there was an equal benefit to Sheryl as the other residuary beneficiaries of the Estate, even though the practical terms of settlement did not require Sheryl to liquidate assets and return funds to herself in her capacity as the other residuary beneficiary. In holding otherwise, the Court improperly elevated form over substance.

4

In sum, Appellants primarily allege that this Court erred when we determined that the settlement reached by and between Appellants and Sheryl Moon did not constitute the creation of a common fund for the benefit of the estate. We discuss Appellants' contentions below.

## DISCUSSION

The general rule with regard to the payment of counsel fees is that each party to adversary litigation is required to pay their own fees. Estate of Wanamaker, 314 Pa. Super. 177, 179, 460 A.2d 824, 825 (1983). In the absence of a statute allowing counsel fees, recovery of such fees will be permitted only in exceptional circumstances. Id. One such exceptional circumstance where counsel fees may be recovered is when the work of counsel has created a common fund for the benefit of many. Id. The rationale for this rule is that, "[P]ersons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." Id. (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 472, 100 S.Ct. 745, 746, 62 L.Ed.2d 676 (1980)).

Moreover, with respect to the dollar amount of recoverable attorney's fees, said inquiry is based upon the reasonable value of services actually rendered. In re Estate of Rees, 425 Pa. Super. 490, 625 A.2d 1203 (1993). The reasonableness of attorney's fees is an inquiry within the sound discretion of the court and will only be reversed when there is a clear abuse of that discretion. In re LaRocca's Trust Estate, 431 Pa. 542, 246 A.2d 337 (1968). "It is well established that whenever there is an unsuccessful attempt by a beneficiary to surcharge a fiduciary the latter is entitled to an allowance out of the estate to pay for counsel fees and necessary expenditures in defending himself against the attack." In re Browarsky's Estate, 437 Pa. 282, 285, 263 A.2d 365, 366 (1970) (quoting Wormley Estate, 359 Pa. 295, 300-301, 59 A.2d 98, 100 (1948)).

Finally, with regard to the factors taken into consideration in determining the fees payable to an attorney, the Pennsylvania Supreme Court has stated the following:

> "The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the

5

importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question."

In re LaRocca's Tr. Estate, 431 Pa. 542, 546, 246 A.2d 337, 339 (1968).

The primary contention advanced by Appellants is that when Appellants effectuated a settlement with Sheryl Moon for the return of non-probate assets, the terms of the settlement constituted the creation of a common fund for all estate beneficiaries, thereby entitling Appellants to have the estate reimburse them for the counsel fees and costs incurred in the recovery of those assets. In support of their contention, Appellants advance a somewhat creative argument that the settlement reached with Sheryl Moon benefitted the estate as a whole by a sum of over $1 million. We do not find Appellants' argument persuasive. Sheryl Moon and Appellants were the sole beneficiaries of the estate. Over the course of the estate litigation, the beneficiaries agreed that Sheryl Moon would pay Appellants $550,000.00 to bring an end to the litigation. No other beneficiaries, aside from Appellants, benefitted from this payment. Thus, we do not perceive this direct payment as constituting the creation of a common fund that benefitted many or all estate beneficiaries, but rather evidences the attempt of Appellants' counsel to recover monies only for the benefit of her clients. Furthermore, there are no estate beneficiaries who were unjustly enriched by the efforts of Appellants' counsel. See Estate of Wanamaker, 460 A.2d at 825. We therefore exercised our discretion in denying Appellants' request for payment of attorneys' fees from the estate.

With respect to Appellants' contentions regarding their litigation efforts, we find Appellants' arguments unpersuasive. The record establishes that Appellants brought an unsuccessful surcharge claim against FNB, which necessitated FNB to expend attorney's fees in its defense. FNB's litigation costs eventually depleted the estate of $135,281.82, the sum paid to FNB from the estate by way of settlement. Furthermore, as discussed above, the practical impact of the settlement reached

6

by Sheryl Moon and Appellants was a direct payment to Appellants for Appellants' sole benefit. Finally, It should be noted, that by overruling both Sheryl Moon and Appellants' objections to the Second and Final Account, additional monies remained in the estate account to be distributed equally, per Decedent's intent under the Will, to both Sheryl Moon and Appellants.

## CONCLUSION

Based upon the foregoing, we suggest that the present appeal should be dismissed.

BY THE COURT:

_8/10/2018_
DATE

C. THEODORE FRITSCH, JR., ADMIN. J

N.B. It is your responsibility
to notify all interested parties
of the above action.

7