**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1660-21
                    A-1807-21
                    A-1808-21

IN THE MATTER OF THOMAS
R. TOMEI TRUST.

_____

Submitted December 19, 2023 – Decided February 27, 2025

Before Judges Gooden Brown and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Camden County, Docket No. CP-0120-2013.

Ritigstein Law and Obermayer Rebmann Maxwell & Hippel, LLP, attorneys for appellant Thomas R. Tomei in A-1660-21 (Michael D. Ritigstein, Matthew A. Green, and Lars J. Lederer, on the briefs).

Ciardi Ciardi & Astin and Paul A. Bucco (Davis Bucco Makara & Dorsey), attorneys for appellant Vincent H. Tomei in A-1807-21 and A-1808-21 (Albert A. Ciardi, III, and Paul A. Bucco, on the brief).

Ciardi Ciardi & Astin and Paul A. Bucco (Davis Bucco Makara & Dorsey), attorneys for respondent Vincent H. Tomei in A-1660-21 (Albert A. Ciardi, III, and Paul A. Bucco, on the brief).

DiMarino, Lehrer & Collazo, PC, attorneys for respondent Estate of Marie L. Tomei, in A-1660-21, join in the brief of respondent Vincent H. Tomei.

Ritigstein Law and Obermayer Rebmann Maxwell & Hippel, LLP, attorneys for respondent Thomas R. Tomei in A-1807-21 and A-1808-21 (Michael D. Ritigstein and Lars J. Lederer, on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

This is an intra-familial dispute dating back to 2013 between a son, plaintiff, Thomas Tomei; his father, defendant, Vincent Tomei; and his mother's estate, the Estate of Marie Tomei, (collectively, defendants), over the management of three trusts. The trusts were established to provide benefits to plaintiff. Vincent,[1] who passed away on April 28, 2023,[2] was the trustee.

Plaintiff was the president and general manager of H&H Manufacturing, Inc. (H&H), a Pennsylvania company that manufactured industrial equipment. H&H has been wholly owned by Tomei family members and their affiliated trusts for many years. Over the years, plaintiff's trusts received distributions

---

[1] Because of the common surname, we refer to the parties using first names and intend no disrespect.

[2] On November 14, 2023, we granted Vincent's motion to substitute the Estate of Vincent Tomei as the proper party. Nonetheless, we will continue to refer to Vincent throughout this opinion.

from H&H in excess of $70 million, and gradually acquired a controlling ownership interest in H&H. As a result of disputes in H&H's management, plaintiff sued defendants for breach of fiduciary duty, alleging Vincent misappropriated trust funds by, among other things, providing gifts from his trusts to various family members, including plaintiff's children, without his consent.

The trial judge ultimately granted defendants summary judgment in orders dated May 13, 2021, dismissing plaintiff's complaint with prejudice. In an August 3, 2021 order, the judge denied plaintiff's motion for reconsideration. Although the judge granted defendants summary judgment, she denied Vincent's ensuing motion for counsel fees to two different law firms in orders entered on January 24, 2022.

In these back-to-back appeals, which we consolidate for purposes of issuing a single opinion, the parties appeal from the respective adverse orders. In A-1660-21, plaintiff challenges the summary judgment dismissal of his complaint and denial of reconsideration[3] on various grounds, arguing that the

---

[3] Although plaintiff identifies the order denying reconsideration in his notice of appeal, plaintiff presents no legal argument relating to the denial of the motion. As a result, plaintiff has effectively waived the argument on appeal. See N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal.").

A-1660-21

judge relied on trust instruments that were forgeries, failed to recognize genuine issues of material fact, incorrectly dismissed plaintiff's claims for fraud and gross negligence, and erroneously found that plaintiff's claims were barred by the statute of limitations and laches. In A-1807-21 and A-1808-21, Vincent argues the judge's denial of his counsel fee applications is contrary to New Jersey and Pennsylvania jurisprudence governing counsel fee awards as well as the language of the trust documents.

Based on our review of the extensive record and the applicable legal principles, we affirm in part, reverse in part, and remand for further proceedings.

## I.

We glean these facts from the record. On July 19, 1976, Vincent established the irrevocable Thomas R. Tomei Special Trust (the Special Trust), with Vincent as settlor and individual trustee, and plaintiff as beneficiary. Vincent managed the trust, though William E. Bierlin, Jr., was named as an independent trustee, and Herbert I. Berkowitz, then a young intern working for Vincent, as successor independent trustee.

The trust specified that the trustees would "hold," "manage," and "invest" trust property for plaintiff's benefit. It included a limitation on liability, stating:

> No [t]rustee shall incur any personal liability of any
> character whatsoever by reason of any matter or thing

of whatsoever nature which may occur in connection with the administration of this [t]rust, save only liability arising from gross negligence, willful default or fraud.

Further, according to the terms, the situs of the trust "shall be within the Commonwealth of Pennsylvania," and the "[d]eed shall be interpreted and construed according to the laws of [Pennsylvania]."

On the same day, July 19, 1976, Vincent established a second trust for plaintiff's benefit, the irrevocable Thomas R. Tomei Special Trust # 2 (the Special Trust # 2). The Special Trust # 2 was almost identical to the Special Trust and Vincent was again the trustee.

On August 18, 1983, plaintiff and Vincent established a third trust, the irrevocable Thomas R. Tomei Trust (the 1983 Trust). Once again, plaintiff was the beneficiary and Vincent was the trustee, and the trust specified that Vincent, as trustee, would "hold," "manage," and "invest" certain trust property for plaintiff's benefit.

The trust also included a limitation on liability, stating:

> No [t]rustee shall incur any personal liability of any character whatsoever by reason of any matter or thing of whatsoever nature which may occur in connection with the administration of the [t]rust or any fund created hereunder, save only liability arising from gross negligence, willful default or fraud.

5

A-1660-21

All three trusts include identical language under the heading "Administrative Powers of Trustees," providing that the trustee is authorized

> [t]o employ accountants, agents, attorneys, employees, investment counselors and other representatives, to act without independent investigation upon their recommendations and to determine and pay their compensation and expenses out of this [t]rust.

Plaintiff began working for H&H in 1972, prior to the creation of the trusts, and Vincent served on H&H's Board of Directors since 1976, when the first two trusts were established. H&H's principal place of business is in Delaware County, Pennsylvania. Plaintiff became president of H&H around 1984 and was responsible for its daily operations, while Vincent, an accountant by trade, managed the company's financial affairs. Since 1984, Tomei family members or trusts whose beneficiaries are Tomei family members owned H&H in varying share percentages and plaintiff, Vincent, and Marie, reportedly the corporate secretary, were all signatories on H&H's business accounts. The precise percentages of ownership interests and shares held by each family member have been the subject of other litigation, albeit tangentially.[4]

---

[4] See, e.g., H&H Mfg. Co. v. Tomei, No. A-4209-19 (App. Div. Dec. 29, 2021); H&H Mfg. Co. v. Bucco, No. A-2913-21 (App. Div. Nov. 13, 2023); H&H Mfg. Co. v. Tomei, No. A-1309-22 (App. Div. Apr. 17, 2024).

Beginning around 1990, H&H became very profitable, earned income of several million dollars per year, and typically distributed almost all of its annual income to shareholders for tax purposes, totaling in excess of $82 million since 1989. With plaintiff's consent, his H&H distributions were paid to Vincent as trustee of plaintiff's three trusts. In turn, Vincent made transfers from H&H to plaintiff's trust accounts.

Around 1994, plaintiff bought out his family members' interests in H&H, except for Marie's, and, as a result, his trusts gradually obtained an increasing number of H&H shares. Using the proceeds from plaintiff's buy-out, Vincent established trusts for several family members, including trusts for plaintiff's children, Thomas Tomei II and Lynn Tomei, as well as trusts for his other son, Mark Tomei, and Mark's children, Matthew and Michael Tomei.[5] Thereafter, on unspecified dates, Vincent made countless transfers and gifts from plaintiff's trusts to these family members.

As of 2006, plaintiff's 1983 Trust contained 94.69% of H&H shares. The vast majority of funds held on behalf of the trusts were held in accounts at Oppenheimer & Co., Inc. (Oppenheimer) or Charles Schwab & Co. (Schwab).

---

[5] Although they were not named as parties in the trial court proceedings, plaintiff's notice of appeal lists Mark Tomei, Thomas Tomei II, and Lynn Tomei as respondents.

A-1660-21

During Vincent's management of plaintiff's trusts, it is undisputed that their value increased significantly.

Beginning around 2012, plaintiff and Vincent had disagreements about the management and operation of H&H. In 2012, plaintiff observed a fax printout in Vincent's office showing millions of dollars in the trust accounts of other family members, causing him to suspect that his H&H distributions had been misappropriated. As a result, plaintiff directed that his H&H distributions be paid to him directly, rather than to Vincent as trustee.

Fueled by the disagreements, on June 3, 2013, Vincent, who claimed to be acting as H&H's primary voting shareholder by virtue of Marie's shares, terminated plaintiff's employment with H&H over plaintiff's objection. Thereafter, on June 17, 2013, Vincent and H&H, later joined by Marie as an intervenor, filed a complaint against plaintiff in the Court of Common Pleas, Delaware County, Pennsylvania (Delaware County court), alleging, among other things, that plaintiff had breached his fiduciary duties to the company. Plaintiff filed a counterclaim for breach of fiduciary duty in the operation of H&H. The lawsuit commenced years of litigation and a receiver was appointed to operate H&H in the interim.

8

In 2017, following a bench trial, the Delaware County court found that plaintiff's termination at the June 3, 2013, shareholder meeting was void and invalidated his termination. The court found that Vincent's and Marie's claims were barred on equitable grounds because they were rooted in Vincent's own immoral or illegal acts. Specifically, the court found that Vincent forged and fabricated H&H records by "creating multiple sets of H&H share books, manufacturing meeting minutes, and unilaterally submitting [a]rticles of [a]mendment to the Pennsylvania Department of State without authorization to do so."[6]

Pertinent to this appeal, the Delaware County court found that the two trusts created in 1976 expired in 2016 and 2017, respectively. Multiple versions of the trusts were produced during the litigation. One version of the Special Trust provided that the duration of the trust would be forty-one years, at which time plaintiff could withdraw the principal and undistributed income. This version of the trust did not specifically identify plaintiff's children. Another

---

[6] The Delaware County court also dismissed all claims Vincent asserted on H&H's behalf, concluding Vincent lacked standing to sue on behalf of H&H because H&H's board of directors never approved the filing of the lawsuit. H&H subsequently sued Vincent in the New Jersey Superior Court, Law Division, asserting claims for damages it allegedly sustained as a result of the improper Delaware County action.

version of the trust provided that the duration of the trust would be twenty years and made reference to plaintiff's two children who were not yet born in 1976. A third version of the trust included a forty-year duration and also made reference to plaintiff's yet-unborn children. The Delaware County court apparently concluded that the forty-year and forty-one-year versions were effective.

Regarding the 1983 Trust, plaintiff's version provided that the duration of the trust would be twenty years, concluding on August 18, 2003, at which time the principal and undistributed income would be paid to plaintiff. It also provided that the situs of the trust was New Jersey and that it should be interpreted and construed under the laws of New Jersey. In contrast, Vincent's amended version provided that the duration of the 1983 Trust would be thirty years, concluding on August 18, 2013, that the situs of the trust was Pennsylvania, and that it should be interpreted and construed under the laws of Pennsylvania. The Delaware County court held that the version of the 1983 Trust with a twenty-year term and a situs in New Jersey was effective. The Pennsylvania appellate court affirmed the Delaware County court's decision, H&H Mfg. Co. v. Tomei, No. 1196-EDA-2018, 2019 WL 2226096, at *1 (Pa. Super. Ct. May 22, 2019), and the Pennsylvania Supreme Court denied further review, H&H Mfg. Co. v. Tomei, 224 A.3d 1263 (Pa. 2020).

A-1660-21

Meanwhile, plaintiff filed a verified complaint against Vincent on June 12, 2013, in the New Jersey Superior Court, Chancery Division, to confirm the termination of the 1983 Trust, to compel an accounting, to impose resulting and constructive trusts, and for injunctive relief. By order entered on June 18, 2013, the New Jersey Superior Court judge directed Vincent to turn over to plaintiff the assets in the 1983 Trust, namely, the stock in H&H, and to provide an accounting. Consistent with plaintiff's position, the judge found that the 1983 Trust had terminated on August 18, 2003, and imposed a resulting trust on any assets accrued after that date. Vincent was removed as trustee of the Special Trust and Special Trust # 2, and Charles P. Bowes was appointed successor trustee of both.

Vincent appealed, alleging error in the judge's finding that the 1983 Trust terminated in 2003, instead of 2013. On August 28, 2014, we issued an unpublished opinion in In re Thomas R. Tomei Trust, No. A-5075-12 (App. Div. Aug. 28, 2014), reversing and remanding for a plenary hearing to determine the termination date for the 1983 Trust. In lieu of a plenary hearing, on January 21, 2015, the judge entered an order reflecting the parties' agreement that the 1983

A-1660-21

Trust terminated on August 18, 2003, and that New Jersey law would apply.[7] Notwithstanding the consent order, the trust assets were not immediately distributed.

Thereafter, on July 29, 2015, plaintiff filed an amended verified complaint against Vincent and Marie, which is the operative complaint that is the subject of this appeal. The complaint contained nineteen counts, most of which were directed at Vincent and predicated on the allegation that Vincent engaged in fraudulent conduct as the trustee of plaintiff's trusts and committed illegal acts without plaintiff's knowledge or consent.

Specifically, in count one, plaintiff sought enforcement of the June 18, 2013 order directing Vincent to distribute to plaintiff the assets of the 1983 Trust and provide an accounting of that trust. Plaintiff also sought an accounting for his other trusts.

In count two, plaintiff alleged improper transfers from the 1983 Trust to the Special Trust and sought an order directing Bowes, the new trustee of the Special Trust, to distribute from the Special Trust all funds transferred there from the 1983 Trust since August 18, 2003.

---

[7] Although the January 21, 2015 order only references the termination date of the trust, a February 5, 2015 order that was not provided in the record confirms that New Jersey law would apply to the 1983 Trust.

In count three, plaintiff sought an order confirming the termination of the Special Trust as of July 19, 1996, and imposing a resulting trust on its assets from that date forward. In count five, he sought an order requiring Vincent to produce a full and valid version of the Special Trust # 2.

Counts four and six through thirteen alleged improper conduct by Vincent as trustee of the Special Trust during an unspecified period, through transfers of funds out of the Special Trust. Specifically, in count four, plaintiff alleged improper transfers from the Special Trust to the Special Trust #2, and sought an order directing Bowes, the new trustee of the Special Trust #2, to turn over all funds transferred to the Special Trust #2 after its purported termination on July 19, 1996, alleged to be in excess of $17 million.

In count six, plaintiff sought an order turning over the funds transferred from plaintiff's Special Trust to his son's trust, alleged to be approximately $985,286.[8] In count seven, plaintiff sought an order turning over the funds transferred from plaintiff's Special Trust to his daughter's trust, alleged to be approximately $569,660.

In count eight, plaintiff sought an order turning over the funds transferred from plaintiff's Special Trust to his brother Mark's trust, alleged to be

---

[8] We round all monetary amounts to the nearest dollar.

approximately $85,005. In count nine, plaintiff sought an order turning over the funds transferred from plaintiff's Special Trust to another one of Mark's trusts, alleged to be approximately $7,296.

In count ten, plaintiff sought an order turning over the funds transferred from plaintiff's Special Trust to the trust of his nephew, Matthew, alleged to be approximately $153,282. In count eleven, plaintiff sought an order turning over the funds transferred from plaintiff's Special Trust to Matthew's special trust, alleged to be approximately $30,356. In count twelve, plaintiff sought an order turning over the funds transferred from plaintiff's Special Trust to the trust of his other nephew, Michael, alleged to be approximately $9,990.

In count thirteen, plaintiff sought an order turning over the funds transferred from plaintiff's Special Trust to his mother Marie, alleged to be approximately $58,243.

Counts fourteen through sixteen alleged improper transfers of H&H funds by Vincent, during an unspecified period when 94.69% of the shares in H&H were owned by the 1983 Trust and later by plaintiff individually. The complaint also alleged that at no time has the Special Trust or the Special Trust #2 held an ownership interest in H&H.

A-1660-21

Specifically, in count fourteen, plaintiff sought an order directing Vincent to account for his distribution of H&H funds of approximately $21 million to an account held in the name of the Special Trust at Oppenheimer, and approximately $600,000 to an account held in the name of the Special Trust at Schwab.

In count fifteen, plaintiff sought an order directing Vincent to account for his distribution of H&H funds of approximately $2.6 million to an account held in the name of the Special Trust #2 with Oppenheimer.

In count sixteen, plaintiff sought an order directing Vincent to account for his distribution of H&H funds of approximately $98,404 to an account at Oppenheimer; $238,416 to an account at Oppenheimer; $350,000 to an account at Oppenheimer; $1,950,000 to an account at an unknown institution; $15,041,477 to unknown accounts; $1,625,000 to an account at an unknown institution; $42,000 to an account at an unknown institution; and $3,613,742 to an account at an unknown institution.

In count seventeen, plaintiff sought an order holding Vincent liable for fraud, specifically alleging that Vincent altered signature pages of certain trusts, made transfers from plaintiff's trusts benefitting other parties, and directed

15

payments from H&H to third parties.[9]  Plaintiff further alleged fraud predicated on Vincent's failure to distribute the assets of the 1983 Trust as required by the court's June 18, 2013 order.

In count eighteen, plaintiff sought an order declaring that Vincent was not entitled to any commissions for serving as trustee of plaintiff's trusts due to his breach of fiduciary duty by "commingling assets both between [plaintiff's t]rusts and trusts held for the benefit of third parties."  Plaintiff also cited Vincent's admission during a January 24, 2014, deposition that he breached his fiduciary duty as trustee "by withholding funds from [plaintiff's trusts] based on his unfounded belief [that plaintiff] embezzled H&H funds."

In count nineteen, plaintiff sought counsel fees, again citing Vincent's admission during the deposition as to the breach of his fiduciary duty.  In each count, except counts one, five, and eighteen, plaintiff also sought to surcharge Vincent for any losses associated with his actions.

Vincent and Marie filed separate answers to plaintiff's amended complaint and Vincent filed a counterclaim for counsel fees, citing only New Jersey law.[10]

---

[9]  Although this count did not expressly allege gross negligence, the trial court considered this count as if it included such allegations without objection from the parties.

[10]  Vincent filed an amended answer that did not seek counsel fees.

Plaintiff's subsequent motion to file a second amended complaint to add the trusts of family members alleged to have received unauthorized distributions was denied by the trial court.

On September 9, 2016, while both the Delaware County and the New Jersey Superior Court litigation were pending, the trial court entered a judgment of diminished legal capacity as to Vincent, appointing Mark as his limited guardian. Two doctors certified that Vincent was "unfit and unable to govern himself and manage his affairs" because of dementia. One doctor opined that Vincent did not have the capacity to be deposed or testify at a trial. Vincent agreed that a guardian was necessary.

Although the judgment provided that Vincent was "not fully incapacitated," it stated he was "unfit and unable to govern himself and manage all of his affairs." According to the judgment,

> Vincent [was] presently engaged in a number of litigation matters in courts in Pennsylvania and New Jersey against his older son, [plaintiff], regarding the family-owned business, [H&H], and certain family trusts in which [plaintiff] is the alleged beneficiary, but does not have the capacity to continue to participate in, assist his counsel, or testify in litigation matters[.]

Nonetheless, the judgment specified that Vincent was capable of managing his and Marie's "personal financial affairs, including but not limited

A-1660-21

to management of their money, investment portfolio, real and personal property, and other assets." Marie died on March 21, 2017.

The parties retained forensic accounting experts, who reviewed the company's history and the trusts' activities and prepared reports. Vincent and Marie retained Dana Trexler Smith, of EisnerAmper LLP, who issued an initial report on August 10, 2017. Smith reviewed the books and records of H&H, as well as annual accountings for the 1983 Trust from 1983 through 2014, the Special Trust from 1995 through 2014, and the Special Trust # 2 from 2009 through 2014. She acknowledged that her conclusions were limited because documentation was unavailable for certain periods.

Smith concluded that since 1991, H&H distributed $82,340,290. Of that, $74,311,763 was paid for plaintiff's benefit either to his trusts or to plaintiff and his wife[11] directly, and $7,895,111 was paid to various other Tomei shareholders. She confirmed that all H&H checks paid to Vincent as trustee of plaintiff's trust accounts were actually deposited into those accounts. Smith issued two reply reports and two supplemental reports, and later provided a certification in support of defendants' summary judgment motion, concluding

---

[11] Plaintiff's wife, Jannette Tomei, was employed by H&H as the bookkeeper.

A-1660-21

that after comparing the H&H distributions with what was actually deposited into accounts for plaintiff's benefit, she was unable to reconcile only $52,435.

Smith separately considered the net transfers into and out of plaintiff's trusts. She issued a supplemental report concluding that a net of $4,401,800 was transferred out of plaintiff's various trust accounts, including $2,285,267 to plaintiff himself, $1,926,133 to his children, and $173,347 to his parents. In addition, $17,053 was paid from plaintiff's trusts to Mark's family.

Plaintiff retained John P. Sullivan, of Sullivan Strategic Certified Public Accountants, who issued an initial report on December 27, 2017. As to H&H's distributions, Sullivan concluded that H&H distributed $82,420,064 since 1989. He initially relied on Smith's finding that $74,311,763 was actually paid for plaintiff's benefit, but concluded that $76,730,297 should have been paid for plaintiff's benefit, leaving a "shortfall" of $2,418,534 owed to plaintiff.

After plaintiff directed Sullivan to analyze the available documentation with the firm Forensic Resolutions, Inc., and without relying on Smith's calculations, Sullivan issued a supplemental report concluding that plaintiff's trusts were actually owed $5,421,433. Sullivan explained that due to the lack of available documentation prior to 2000, he utilized certain filed tax returns that Smith did not. Separately, Sullivan confirmed that the various accounts for

19

Vincent, Marie, Lynn, Thomas II, Mark, Matthew, and Michael included numerous unexplained deposits, withdrawals, and transfers.

Simultaneously, plaintiff retained Erik Ringoen, a forensic accountant, of Forensic Resolutions, Inc., who issued a supplemental report on March 11, 2021.[12] Ringoen examined plaintiff's trust accounts, as well as those of the Tomei family members, from June 1, 2000, through December 31, 2014, and compared them with the distributions from H&H. Ringoen concurred with Sullivan that there was an "unexplained difference" of $5,421,433 in purported distributions from H&H missing from plaintiff's various trust accounts. Ringoen issued additional reports concluding that there were at least 323 unexplained deposits into the various Tomei family members' accounts. He concluded that Vincent failed to maintain sufficient records for his activities as trustee.

Over plaintiff's objection, Vincent moved for summary judgment, seeking dismissal of plaintiff's amended complaint. The Estate of Marie joined Vincent's motion. Vincent asserted that plaintiff's claims failed and were time-barred under Pennsylvania's five-year statute of limitations. See 20 Pa.C.S. § 7785(b)(1.1). He also asserted that all three trust documents limited his liability

---

[12] It appears that Forensic Solutions, Inc., prepared an original report dated May 3, 2019, that was not provided in the record.

A-1660-21

to instances of gross negligence. Further, in a supporting certification and during his deposition, Vincent averred that his actions materially increased the value of plaintiff's trusts, plaintiff fully participated in the management and investment strategy of the trusts, and plaintiff approved the transfers and gifts to family members, particularly the gifts to his children. In that regard, Vincent referred to a 2014 text message from plaintiff to Lynn in which plaintiff wrote, "I put almost every dollar into your trust." In her deposition, Lynn confirmed receiving the text message from plaintiff.

Vincent certified that plaintiff received annual reports and K-1 forms[13] from the trusts showing Vincent's actions. Additionally, the information was included on plaintiff's personal tax returns, which listed the income received from his trusts. Further, as president of H&H, plaintiff was charged with knowledge of the company's annual distributions. As such, plaintiff saw the tax returns and the K-1 forms for H&H, showing distributions paid from H&H to his trusts.

To support his motion, Vincent relied on a 1983 power of attorney (POA) giving him broad authority to manage plaintiff's affairs. Vincent also relied on

---

[13] A K-1 form is a federal tax document used to report income, losses, and dividends for a business's shareholders.

A-1660-21

a 2001 release agreement (2001 Release) confirming that plaintiff actively participated in the management of the trusts, approved of all activities, and made independent investment decisions.

As to the former, on August 19, 1983, plaintiff allegedly executed a POA appointing Vincent as his "true and lawful attorney" with "full power and authority" to "execute, acknowledge and deliver any writing and to do, perform and transact each and every other act that [plaintiff] personally could lawfully do, perform or transact." The POA specified that plaintiff's intention was to confer upon Vincent "the most comprehensive power possible" in connection with the "management and conduct of all of [plaintiff's] estate and affairs." Among the acts authorized were the ability to make "deposits" and "withdrawals" in any account; to "create a trust for [plaintiff's] benefit" and "to transfer to such trust at any time . . . any or all property owned by [plaintiff]"; the power to "make gifts"; and the ability to act "with respect to any . . . interest" plaintiff held. The POA was signed by plaintiff and witnessed by Marie and a notary public.

Plaintiff disputed the POA, testifying at his deposition that he did not recall signing the document and could not "say . . . for sure" whether he had ever given Vincent power of attorney. He testified that he did not meet the notary of

A-1660-21

the purported 1983 POA until 2014, and the notary herself confirmed that she did not recall meeting with plaintiff at the time the POA was purportedly signed. Although plaintiff could not recall signing the POA, he explained that "the time frame" was during "the height of [his] divorce" and acknowledged that Vincent "was probably" trying "to keep money from [his] wife."

Regarding the 2001 Release, on June 6, 2001, in order to "become more actively involved in the investment strategy of the [t]rusts," plaintiff signed an "Approval, Release, and Indemnity Agreement," absolving Vincent of any liability in connection with his investments. The 2001 Release was intended to "induc[e] the trustees of the [1983 Trust and the Special Trust] to make such investments with the assets of the trust which [plaintiff] desires be made" and to "release[] and relinquish[] all claims which [plaintiff] may have against the trustees with respect to the same and . . . to indemnify and hold harmless the trustees of and from any and all liability to which they may be subjected on account of their implementing [plaintiff's] investment choices." Critically, the 2001 Release provided that plaintiff was "fully familiar" with the trusts' activities and that he "approve[d] in all respects" the "investments" made. Plaintiff did not dispute signing the 2001 Release.

To further support his summary judgment motion, Vincent submitted an affidavit prepared by Mark, who was also a former H&H shareholder and board member. In the affidavit, Mark affirmed that plaintiff had detailed knowledge of his trusts and Vincent's management of them. Mark explained that he had several conversations with plaintiff about his trusts. Mark also averred that plaintiff "knew of, directed, and approved the transfer of assets from his trust accounts to various trust accounts of other family members." Mark further confirmed that H&H and plaintiff's trusts filed annual tax returns and plaintiff received yearly K-1s from the trusts. He also certified that certain transfers were part of a "cash management system" for H&H, and sometimes involved "asset swaps for tax purposes."

In contrast, plaintiff denied that he materially participated in the management of his trusts. In one deposition, plaintiff stated that he and Vincent never discussed the trust agreements. In another deposition, he stated that he never discussed transfers to his daughter with Vincent or Marie. Plaintiff also denied receiving annual reports, tax returns, or K-1s for his trusts. Nonetheless, he confirmed in a deposition that as president of H&H, he saw "the amounts that came out of H&H" which were paid to Vincent as trustee for deposit into plaintiff's trusts. Further, he testified at a deposition that he sometimes served

24

as bookkeeper of H&H, and was always aware of the payments made to Vincent as trustee. In yet another deposition, plaintiff acknowledged that he had "some say" in how trust assets were invested. He testified that he "regularly" asked for and received statements showing the balances in the 1983 Trust held at Oppenheimer. He also admitted that he sometimes went online to access "all" the trust accounts at Oppenheimer.

Nonetheless, to support his fraud claim, plaintiff pointed to the multiple versions of trust documents to show that Vincent manipulated the trusts for his own purposes. For example, the notary who executed the 1983 Trust later testified in the Delaware County court that the signature pages attached to Vincent's version of the 1983 Trust and plaintiff's version of the 1983 Trust were "the same page." In a January 2014 deposition, Vincent acknowledged that multiple versions of certain trust documents existed because he had recreated documents following a flood at his home.

The trial judge heard oral argument on defendants' summary judgment motion on May 10, 2021, and granted the motion in orders entered on May 13, 2021.[14] In an oral opinion placed on the record on May 14, 2021, the judge accepted Vincent's argument that laches applied to bar counts one through

---

[14] The judge entered separate orders for Vincent and the Estate of Marie.

sixteen. According to the judge, because plaintiff failed to use due diligence in evaluating Vincent's conduct, it was unfair to bring this belated action. The judge found defendants were prejudiced by the fact that certain documents were lost or destroyed, including by virtue of the flood at Vincent's home. The judge also found prejudice caused by Vincent's inability to testify about conversations that occurred forty years earlier following the entry of the judgment of diminished legal capacity and the appointment of a guardian.

Further, the judge relied on the equitable doctrines of "acquiescence and consent," finding that as father and son, plaintiff had the ability to study Vincent's management of his finances, but "decided he was[ not] going to do anything about it even though he had all the tools at his fingertips." The judge pointed to the annual H&H tax returns to support her finding that plaintiff had "a lot of paper evidence at his disposal which he may have chosen not to look at." Thus, the judge concluded that during the trust term, plaintiff "acquiesced in the[] actions because he was interested in protecting his assets."

Regarding count seventeen alleging fraud, the judge found that plaintiff failed to show any evidence that Vincent made material factual misrepresentations. Explaining that the doctrine of laches also applied, the judge concluded that plaintiff had not met his "burden . . . to show that Vincent

26

ha[d] committed fraud." Similarly, the judge found that plaintiff presented no evidence of gross negligence. On the contrary, the judge found that Vincent "wisely managed and invested" the funds in plaintiff's trusts, making "a lot of money" for plaintiff's trusts, and that plaintiff never questioned Vincent's investment strategy.

To support her ruling, the judge pointed to the POA, the 2001 Release, and plaintiff's text message to Lynn stating that he put "every dollar" in her trust as evidence that plaintiff "authorized Vincent to make any and all transfers as Vincent deemed fit," "knowingly gave Vincent absolute discretion to conduct his affairs," and acquiesced to Vincent's actions. The judge, however, did not expressly address counts eighteen and nineteen. Subsequently, the judge denied plaintiff's motion for reconsideration in an order and oral opinion entered on August 3, 2021. The judge determined that plaintiff failed to meet the standard for reconsideration and merely reiterated the "same arguments" raised earlier.

After prevailing in his summary judgment motion, Vincent filed separate applications for counsel fees. Specifically, over plaintiff's objection, the law firms of Ciardi Ciardi & Astin (Ciardi law firm), and Davis Bucco Makara & Dorsey (Davis law firm) each filed an application for counsel fees. The Ciardi law firm represented Vincent in connection with the summary judgment motion

and sought a total of $188,948, consisting of $179,945 in fees and $9,003 in costs for the period March 9, 2021, through May 19, 2021. In support, Vincent argued that Rule 4:42-9(a)(2) "allows fiduciaries to pay counsel fees out of trust accounts entrusted to them," and N.J.S.A. 3B:14-23(*l*) permits fiduciaries to "employ and compensate attorneys for services rendered to the estate or trust or to a fiduciary in the performance of the fiduciary's duties."

The Davis law firm represented Vincent throughout this litigation as well as the Pennsylvania litigation and sought a total of $1,872,135 in fees and costs for the period November 2013 through May 2021. The Davis law firm invoices showed at least eight attorneys working on this matter, but many of the entries pertained to the Delaware County litigation. To support the fee application, Vincent advanced the identical legal arguments made in the Ciardi law firm's application.

On January 24, 2022, the judge entered an order denying both the Ciardi and Davis law firms' applications. In support, the judge placed a single oral opinion on the record on January 26, 2022, though the opinion only addressed the Davis law firm's application. In the opinion, the judge rejected Vincent's claim that the "fund[-]in[-]court" exception in Rule 4:42-9(a)(2) applied to the Davis law firm's application. Relying on In Re Prob. of Alleged Will of

Landsman, 319 N.J. Super. 252, 272 (App. Div. 1999), the judge explained that to recover counsel fees under the fund-in-court exception, the claimant must have "aided directly in creating, preserving or protecting the fund," but that did not occur here. The judge also cited In re Trust Dec. 20, 1961, 399 N.J. Super. 237 (App. Div. 2006), for the proposition that the fund-in-court exception applied where a litigant's efforts benefitted others. However, here, the "lawsuit was generated by [plaintiff] because of the alleged and perceived misconduct[ and] misappropriation of Vincent" and Vincent was "preserving . . . his own interest" and "protecting his reputation" in the action. Therefore, the judge concluded that the Davis law firm's work did not benefit the trust itself but rather Vincent alone.

Turning to the language in the trusts, the judge found that the language permitted an award of fees only "in administration of the trust," not in the adversarial litigation at issue here. Finally, the judge concluded that Vincent failed to demonstrate that the fees, rates, and scope of work were reasonable. The judge found that the Davis law firm's application sought "legal fees in large part for the Pennsylvania litigation, where Vincent was found to have committed fraud and acted in bad faith." Further, the judge found that the amount sought was "exorbitant" and the parties failed to heed the judge's warning throughout

29

the litigation "that there was an over-expenditure of time, effort and legal fees" through the filing of repetitious motions. The judge concluded that the American Rule was applicable and that each party should pay their own counsel fees. Accordingly, she denied the fee application. These appeals followed.

## II.

In A-1660-21, we first address plaintiff's challenge to the judge entering summary judgment on defendants' behalf.

We review the trial court's summary judgment ruling "de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. R. 4:46-2(c); see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted. R. 4:46-2(c); see Brill, 142 N.J. at 540.
>
> [Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (citation reformatted).]

"The very object of the summary judgment procedure . . . is to separate real issues from issues about which there is no serious dispute." Shelcusky v. Garjulio, 172 N.J. 185, 200-01 (2022). Where there is no material fact in dispute, "we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007), overruled on other grounds by Wilson ex rel. Manzano v. City of New Jersey, 209 N.J. 558, 562-63 (2012)). "We review issues of law de novo and accord no deference to the trial judge's [legal] conclusions . . . ." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018).

Plaintiff argues the judge erred in granting summary judgment because she erroneously found that his claims are barred by the equitable doctrine of laches in light of his consent and acquiescence.

Broadly, laches is "'a defense developed by courts of equity' to protect defendants against 'unreasonable, prejudicial delay in commencing suit.'" SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 580 U.S. 328, 333 (2017) (quoting Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 667, 678 (2014)). Under New Jersey law, "[l]aches is an equitable doctrine, operating

A-1660-21

as an affirmative defense that precludes relief when there is an 'unexplainable and inexcusable delay' in exercising a right, which results in prejudice to another party." Fox v. Millman, 210 N.J. 401, 417-18 (2012) (quoting Cnty. of Morris v. Fauver, 153 N.J. 80, 105 (1998)).

"Unlike the mechanical application of a fixed time prescribed by a statute of limitations," id. at 418, "[w]hether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court," Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004) (alteration in original) (quoting Garrett v. Gen. Motors Corp., 844 F.2d 559, 562 (8th Cir.), cert. denied, 488 U.S. 908 (1988)). The test for laches is not what the plaintiff knows but what the plaintiff "might have known by the use of the means of [available] information . . . with the vigilance which the law requires." Enfield v. FWL, Inc., 256 N.J. Super. 502, 521 (Ch. Div. 1991) (quoting Cameron v. Penn Mut. Life Ins. Co., 116 N.J. Eq. 311, 314 (Ch. 1934)). As such, "[l]aches is not excused by simply saying 'I did not know.'" Cameron, 116 N.J. Eq. at 314.

Similarly, under Pennsylvania law, in order to prevail on an assertion of laches, a "respondent[] must establish: a) a delay arising from petitioner's failure to exercise due diligence; and[] b) prejudice to the respondent[] resulting

from the delay." In re Est. of Scharlach, 809 A.2d 376, 382-83 (Pa. Super. Ct. 2002) (quoting Sprague v. Casey, 550 A.2d 184, 187 (Pa. 1988)). As in New Jersey, laches in Pennsylvania may bar a suit in equity where a comparable suit at law would not be barred by an analogous statute of limitations. United Nat'l Ins. Co. v. J.H. Fr. Refractories Co., 668 A.2d 120, 124-25 (Pa. 1995).

Further, in Pennsylvania:

> The party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. Such evidence may include establishing that a witness has died or become unavailable, that substantiating records were lost or destroyed, or that the defendant has changed his [or her] position in anticipation that the opposing party has waived his [or her] claims.
>
> [Commonwealth ex rel. Baldwin v. Richard, 751 A.2d 647, 651 (Pa. 2000) (citation omitted).]

And, as in New Jersey, laches under Pennsylvania law is tested not by what a plaintiff actually knows, but by what the plaintiff "might have known[,] by the use of the means of information within his [or her] reach with the vigilance the law requires." Taylor v. Coggins, 90 A. 633, 635 (Pa. 1914) (quoting Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co., 31 A. 484, 485 (Pa. 1895)).

Applying these principles, we agree with the judge that the doctrine of laches bars the bulk of plaintiff's claims. It is undisputed that Pennsylvania law

33

governed the Special Trust and Special Trust # 2 while New Jersey law governed the effective version of the 1983 Trust. In holding that laches barred plaintiff's claims in counts one through sixteen, the judge did not explicitly apply either state's law in her analysis. However, because the longstanding equitable doctrine of laches is virtually identical in both New Jersey and Pennsylvania, both requiring an inexcusable delay resulting in prejudice, the outcome would be the same irrespective of the state law applied.

Relying on <u>Elias v. Elias</u>, 237 A.2d 215, 217 (Pa. 1968), plaintiff asserts that because his claims do not violate the Pennsylvania statute of limitations, the doctrine of laches cannot lawfully apply inasmuch as "laches follows the statute of limitations."[15] <u>Elias</u> admittedly acknowledged that "[l]acking fraud or

---

[15] In that regard, plaintiff argues his claims were timely under the Pennsylvania statute of limitations for actions against trustees set forth in 20 Pa. Cons. Stat. § 7785(a), which provides:

> (1) A beneficiary is barred from challenging a transaction or asserting a claim against a trustee for breach of trust if:
>
> (i) the trustee provided the beneficiary at least annually with periodic written financial reports concerning the trust;
>
> (ii) the transaction was disclosed in a report to which subparagraph (i) refers or such

concealment the general rule is that laches follows the [s]tatute of [l]imitations."

Id. at 217. However, the Elias court also observed:

> We said in First Nat'l Bank of Pittston v. Lytle Coal Co., 3 A.2d 350, 351 (Pa. 1939):
>
> > "Equity will not lend its aid to one who has slept upon his [or her] rights until the original transaction is obscured by lapse of years and death of parties[,] Kinter v. Commonwealth Trust Co., 118 A. 392, 393

report provided sufficient information so that the beneficiary knew or should have known of the potential claim or should have inquired into its existence;

(iii) in the [thirty] months after a report to which subparagraph (ii) refers was sent by the trustee to the beneficiary, the beneficiary did not notify the trustee in writing that the beneficiary challenges the transaction or asserts a claim and provides in writing the basis for that challenge or assertion; and

(iv) all reports were accompanied by a conspicuous written statement describing the effect of this paragraph.

Plaintiff argues his claims do not violate the Pennsylvania statute of limitations because Vincent did not meet the statutory requirements as trustee. In support, plaintiff asserts he "did not receive financial reports as to the [t]rusts' investments or regular financial statements identifying the funds held by the . . . 1983 Trust." However, given the undisputed evidence of plaintiff's access to and receipt of financial statements, plaintiff's argument is unpersuasive and unavailing.

(Pa. 1922), and where a party having the right to set aside a transaction stands by and sees another dealing with the property in a manner inconsistent with his [or her] alleged claim and makes no objection, a delay of six years will bar a suit in equity."

[237 A.2d at 217 (citations reformatted).]

More recently, in Kern v. Kern, 892 A.2d 1, 9 (Pa. Super. Ct. 2005), the court explicitly held that the application of the doctrine of laches in Pennsylvania "does not depend on a mechanical passage of time." The Kern court specifically recognized that "the doctrine of laches may bar a suit in equity where a comparable suit at law would not be barred by an analogous statute of limitations." Ibid.

In dismissing counts two, four, and six through thirteen based on laches, the judge correctly determined there was clear prejudice arising from plaintiff's delay in pursuing the claims implicated by Vincent's management of the trusts going back as far as 1976. The undisputed facts show that plaintiff should have known of the transfers from his trusts and failed to act in a timely manner, resulting in prejudice to defendants' ability to defend the case occasioned by Vincent's incapacity, Marie's death, and lost trust records.

Specifically, over the years, plaintiff had sufficient access to the trust records and admitted occasionally going online to access "all" of his trust

accounts at Oppenheimer as well as receiving statements from Oppenheimer showing trust balances. In addition, the plain language of the 2001 Release, which plaintiff admitted signing, indicated his full awareness and approval of the trust affairs before 2001, and his intention to "become more actively involved" in the trust affairs thereafter. Further, the text message from plaintiff to his daughter confirmed his awareness and approval of transfers to her trusts. Based on these facts, reasonable diligence dictates that plaintiff should have known of the transfers he now disputes in this matter.

The judge also properly dismissed count five based on laches. Count five sought an order requiring Vincent to produce a valid version of the Special Trust # 2. In his amended complaint, plaintiff alleged transfers of H&H funds to the Special Trust # 2 on unspecified dates. However, plaintiff confirmed that he saw "the amounts that came out of H&H" which were paid to Vincent as trustee for deposit into his various trusts, including the Special Trust # 2. Further, the assets of the Special Trust # 2 were held, at least in part, at Oppenheimer, where plaintiff admitted checking the online information for "all" his accounts. Plaintiff's failure to timely seek the relief sought and resulting prejudice to defendants justify dismissal under the doctrine of laches.

37

Plaintiff argues the judge erred in granting summary judgment when Vincent's versions of the trust documents were clearly forged. Although the judge made passing reference to certain trust terms, she did not expressly address disputes among the various versions of the trusts. Nonetheless, any such disputes are immaterial to the judge's finding of laches. Equally unavailing is plaintiff's contention that the judge erred in relying on the exculpatory language contained in the purportedly forged trust instruments because the judge did not expressly rely on the exculpatory language in granting summary judgment but on the doctrine of laches as applied to the parties' conduct throughout the trusts' existence.

Likewise, we agree with the judge's ruling dismissing for laches counts fourteen through sixteen, which alleged improper transfers of H&H funds by Vincent, separate from the trust funds. As with the trust transfers, the record clearly reflects that plaintiff should have known of the transfers from H&H and failed to timely act. Plaintiff was undisputedly aware of H&H's distributions dating back to the 1980s, as he served as its president and signatory, and even admitted to serving as its bookkeeper at times. He knew that Vincent routinely transferred funds from H&H, and saw the annual K-1 forms showing

distributions from H&H. Once again, his delay resulted in prejudice to defendants' ability to defend the case.

In the Matter of Mosery, 349 N.J. Super. 515, 516-17 (App. Div. 2002), we held that laches was inapplicable to a mother's claim to her deceased husband's estate where their sons had assured her in the face of the husband's inter vivos transfer of his major assets to them that she would be taken care of financially and litigation was unnecessary. We reasoned that the defense of laches was "not regarded with favor" where the parties stood in a "confidential relation" as that of parent and child. Id. at 523 (quoting Weisberg v. Koprowski, 17 N.J. 362, 378 (1955)). However, the circumstances in this case are plainly distinguishable because the parties' relationship included no such assurances by Vincent.

Plaintiff further argues the judge erred in finding that he consented and acquiesced to Vincent's actions over the course of many years. Acquiescence may serve as a bar to equitable relief. Casey v. Brennan, 344 N.J. Super. 83, 118 (App. Div. 2001). In New Jersey, acquiescence to a trustee's actions occurs where "the [beneficiary] knew all of the facts, understood his [or her] legal rights and acted deliberately in not objecting to an investment to which [the beneficiary] knew, or should have known[,] that he [or she] had a right to

39

object." Pa. Co. for Ins. on Lives & Granting Annuities v. Gillmore, 142 N.J. Eq. 27, 43-44 (Ch. 1948). Acquiescence can also arise in a corporate setting involving "the conduct of a stockholder in sitting by or acquiescing in the wrongful conduct of the corporation which[] may, under certain circumstances, preclude the shareholders from obtaining remedies to which they otherwise might have been entitled." Casey, 344 N.J. Super. at 118 (citing Kahn v. Household Acquisition Corp., 591 A.2d 166, 176 (Del. 1991)).

Similarly, in Pennsylvania, "a beneficiary who consents to an act or omission by the trustee which would constitute a breach of trust cannot hold him [or her] liable for the consequences of the act or omission if the beneficiary had full knowledge of all relevant facts and of his [or her] legal rights." Zampetti v. Cavanaugh, 176 A.2d 906, 910 (Pa. 1962). Further, a beneficiary believing a trustee's action is improper has an affirmative duty to speak. In re Macfarlane's Est., 177 A. 12, 15 (Pa. 1935). And, where a shareholder has acquiesced in mismanagement, the shareholder cannot object to the conduct. Erny v. G.W. Schmidt Co., 47 A. 877, 881 (Pa. 1901).

Here, plaintiff raises material factual disputes regarding whether he consented and acquiesced to Vincent's conduct in connection with the management of his trusts and the H&H distributions. Plaintiff asserted he and

Vincent never discussed the trust agreements, and that he never discussed transfers to Lynn with Vincent or Marie. Plaintiff also disputed assertions that he allowed transfers between his trusts as part of a cash management system for H&H or that his receipt of records or tax returns from H&H affirmatively proved that he acquiesced in the management of his trusts or the transfers from H&H.

Summary judgment is inappropriate "where the party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Brill, 142 N.J. at 529 (quoting R. 4:46-2(c)). Had consent and acquiescence been the only bases for the judge's grant of summary judgment, we would agree with plaintiff that reversal was warranted. However, notwithstanding these disputed material facts, the claims were properly dismissed based on laches because even if plaintiff did not actually know of the conduct, he should have known.

Plaintiff also argues the judge erred in granting summary judgment based on the power of attorney because it is a forgery. "A power of attorney is an instrument in writing by which one person, as principal, appoints another as his [or her] agent and confers upon him [or her] the authority to perform certain specified acts or kinds of acts on behalf of the principal." Kisselbach v. Cnty. of Camden, 271 N.J. Super. 558, 564 (App. Div. 1994) (quoting Bank of Am.,

41

Nat'l Tr. & Sav. Ass'n v. Horowytz, 104 N.J. Super. 35, 38 (Cnty. Ct. 1968)). "But a power of attorney of course is not an instrument of gift. In itself, it is no more than the term, power of attorney, imports—an authorization to the attorney to act for the principal." State v. Kennedy, 61 N.J. 509, 512 (1972).

Here, the judge failed to acknowledge the dispute of fact concerning the validity and authenticity of the power of attorney that plaintiff did not recall signing and alleged was a forgery. Instead, the judge presumed the validity of the document as an additional basis to dismiss the claims. Nonetheless, the error is of no moment because we review the grant of summary judgment de novo and we have concluded that dismissal of counts two and four through sixteen based on the doctrine of laches was legally justified without considering the POA.

We reach a different conclusion as to counts one and three. Count one sought enforcement of the June 18, 2013, order directing Vincent to convey the assets of the 1983 Trust and to provide an accounting of the 1983 Trust. Separately, count one sought an accounting of the Special Trust and Special Trust # 2. The judge failed to specifically analyze plaintiff's demands for relief in connection with the 1983 Trust to which he was already entitled by virtue of the June 18, 2013 order. Because plaintiff promptly raised the claim in his amended 2015 complaint, laches is no bar to the relief sought. On the other

hand, the June 18, 2013 order did not address count one's request for an accounting of the Special Trust and Special Trust # 2. We therefore reverse and remand as to count one. On remand, the judge should consider whether laches applies to plaintiff's request for an accounting of the Special Trust and Special Trust # 2.

Count three sought an order confirming the termination of the Special Trust as of 1996, imposing a resulting trust on its assets, and surcharging Vincent for any losses since that time. The judge failed to specifically analyze count three's claims and instead broadly dismissed them for laches. Regardless of the version of the Special Trust applied, the trust has terminated because the longest version contained a forty-one-year term, which expired in 2017, four years after plaintiff initially filed this action. Because the Special Trust did not terminate until after the action was filed and plaintiff is the undisputed beneficiary of the trust and entitled to the trust corpus upon its termination, we conclude the doctrine of laches does not apply to count three and the judge should have considered plaintiff's demand for a resulting trust to effectuate the termination of the trust. Accordingly, we reverse and remand as to count three.

We also reverse and remand as to counts seventeen through nineteen. Count eighteen sought an order providing that Vincent was not entitled to any

43

commission as trustee, and count nineteen sought an award of counsel fees for plaintiff. However, the judge failed to address either count in her oral opinion. Rule 1:7-4(a) requires that on every motion decided by a written order that is appealable as of right, the court "shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law." See Curtis v. Finneran, 83 N.J. 563, 569-70 (1980) ("Failure to perform that duty 'constitutes a disservice to the litigants, the attorneys and the appellate court.'" (quoting Kenwood Assocs. v. Bd. of Adjustment of Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976))). Because the judge failed to explain her findings and conclusions, we are constrained to reverse and remand as to counts eighteen and nineteen.

Turning to count seventeen, which alleged fraud in connection with Vincent's actions as trustee and in relation to H&H distributions, the judge dismissed the count, finding that plaintiff failed to show any evidence that Vincent committed fraud.[16] In New Jersey, to establish a prima facie case of common law fraud, a plaintiff must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its

---

[16] Although plaintiff's amended complaint did not allege gross negligence, the judge also found that plaintiff presented no evidence of gross negligence.

falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005)). Similarly, in Pennsylvania, fraud requires proof of "an intentional representation (or omission), of a material fact, made falsely, with an intent to mislead a [party], that the [party] relied upon to their detriment." In re Passarelli Fam. Tr., 242 A.3d 1257, 1269 (Pa. 2020).

Here, there are disputes of fact regarding fraud Vincent may have committed by altering trust documents and making improper transfers of funds. At a minimum, plaintiff submitted evidence suggesting that Vincent made material misrepresentations by altering signature pages on certain documents, including the power of attorney, and identifying plaintiff's unborn children by name on trust documents. He also provided evidence of Vincent's various transfers to others using funds from plaintiff's trusts, which he alleged to be fraudulent. Critically, the Delaware County court's finding that Vincent forged and fabricated H&H records provides further indicia of possible fraud in this separate but related proceeding. Given the disputed facts as to whether Vincent committed fraud, we reverse and remand as to count seventeen. Although the judge referenced laches in connection with this count, she did not explicitly find

it as a basis for dismissal. On remand, the judge should consider whether the claims in count seventeen may be subject to the laches bar.[17]

III.

In A-1807-21 and A-1808-21, we address plaintiff's challenge to the judge's denial of Vincent's applications for counsel fees.

We will disturb a trial court's determination on counsel fees "only on the rarest occasions, and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995); accord Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001). However, such determinations are not entitled to any special deference if the judge "misconceives the applicable law, or misapplies it to the factual complex." Kavanaugh v. Quigley, 63 N.J. Super. 153, 158 (App. Div. 1960); see also Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (holding that a "trial court's interpretation

_____

[17] Plaintiff correctly points out that in her May 14, 2021 oral opinion, the judge mistakenly found that he had failed to seek the return of the funds from the alleged recipients, including his children's trusts, by naming certain Tomei family trusts as defendants. Indeed, plaintiff's motion to file a second amended complaint to add the trusts of his family members that allegedly received distributions was denied on September 8, 2017. Although the judge's factual conclusion was incorrect, the error was harmless in light of the judge's ruling on laches. See R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . .").

46

of the law and the legal consequences that flow from established facts are not entitled to any special deference").  Still, where case law, statutes, and rules are followed and the judge makes appropriate findings of fact, a fee award is entitled to substantial deference.  Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div. 2000).

New Jersey generally follows the American Rule, which provides that each party must pay his or her own counsel fees.  Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016).  Under the American Rule, litigants generally are responsible for their own counsel fees unless otherwise authorized by statute, court rule, or a contract.  Mason v. City of Hoboken, 196 N.J. 51, 70 (2008).

Pertinent to this appeal, Rule 4:42-9(a)(2) permits fees to be awarded:

> Out of a fund in court.  The court in its discretion may make an allowance out of such a fund, but no allowance shall be made as to issues triable of right by a jury.  A fiduciary may make payments on account of fees for legal services rendered out of a fund entrusted to the fiduciary for administration, subject to approval and allowance or to disallowance by the court upon settlement of the account.

"Fund in court" is an equitable term of art.  Henderson v. Camden Cnty. Mun. Util. Auth., 176 N.J. 554, 564 (2003).  "The fund[-]in[-]court exception generally applies when a party litigates a matter that produces a tangible economic benefit for a class of persons that did not contribute to the cost of the

litigation." Henderson, 176 N.J. at 564. The exception applies "when it would be unfair to saddle the full cost [of the litigation] upon the litigant for the reason that the litigant is doing more than merely advancing his [or her] own interests." Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 168 (1960); accord Henderson, 176 N.J. at 564.

Accordingly, "when litigants through court intercession create, protect or increase a fund for the benefit of a class of which they are members, in good conscience the cost of the proceedings should be visited in proper proportion upon all such assets." Sarner v. Sarner, 38 N.J. 463, 469 (1962). A "pot of money" or actual fund in the possession of the court is not required. Trimarco v. Trimarco, 396 N.J. Super. 207, 215 (App. Div. 2007); accord Henderson, 176 N.J. at 564; Sarner, 38 N.J. at 468. "It is sufficient if, as a result of the litigation, the fund is brought under the control of the court." Trimarco, 396 N.J. Super. at 215-16.

For example, in Henderson, a customer of the Camden County Municipal Utilities Authority (CCMUA) filed a class action challenging the imposition of compound interest on delinquent accounts. 176 N.J. at 558. The Court concluded that compound interest was not permitted and applied its decision directly to the plaintiff and prospectively to other CCMUA customers. Id. at

48

561-63. The Court awarded the plaintiff reasonable counsel fees under the fund-in-court doctrine because, as a result of its decision, CCMUA customers no longer would be charged compound interest. Id. at 565-66. Thus, the fund-in court-doctrine applied because those customers received an economic benefit as a result of the plaintiff's lawsuit. Ibid.

Similarly, the exception has been applied in derivative actions brought by a stockholder on behalf of the corporation. Sarner, 38 N.J. at 468-69 (quoting Sunset Beach, 33 N.J. at 169). Courts have also approved an award of counsel fees under the exception where a lawsuit by taxpayer plaintiffs resulted in an indirect benefit to all Atlantic City taxpayers. Tabaac v. City of Atl. City, 174 N.J. Super. 519, 537-38 (Law Div. 1980). Likewise, the exception applies in a suit to "construe a will or a trust agreement" because the estate or trust fund is "the subject-matter of the litigation and for that reason under the control of the court." Trimarco, 396 N.J. Super. at 216 (quoting Cintas v. Am. Car & Foundry Co., 133 N.J. Eq. 301, 304 (Ch. 1943), aff'd in part, rev'd in part, 135 N.J. Eq. 305 (E. & A. 1944)). However, the fund-in-court exception does not apply when a party litigates a private dispute for its own personal gain. Sunset Beach, 33 N.J. at 168.

A-1660-21

As for counsel fee awards dictated by contractual terms, it is true that trustees are "entitled to the advice and help of counsel in the performance of their duties." Gardner v. Baldi, 24 N.J. Super. 228, 232 (Ch. Div. 1952). However, a trustee has "no right to subject the trust fund unnecessarily to charges for counsel and attorney's fees." Holcombe v. Holcombe's Ex'rs, 13 N.J. Eq. 415, 416 (Ch. 1861). In Mears v. Addonizio, 336 N.J. Super. 474, 476-77 (App. Div. 2001), a trustee-bank sought court approval for counsel fees which resulted from the bank's participation in litigation involving the trust. We noted that the trust permitted the trustee to retain counsel "for the administration of the trust estate," but affirmed the denial of fees because the trustee-bank had employed attorneys to engage in "litigation beyond the administration of the trust estate." Id. at 478, 481.

With certain exceptions not applicable here, "all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a)." R. 4:42-9(b). RPC 1.5(a) requires that "[a] lawyer's fee shall be reasonable." This reasonableness requirement applies in all cases regarding fees, not just cases governed by a fee-shifting statute. Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21-22 (2004).

> The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

[RPC 1.5(a).]

Applying these principles to Vincent's counsel fee application for the Davis law firm in A-1808-21, we discern no abuse of discretion in the judge's denial of counsel fees. Unlike <u>Henderson</u>, where the plaintiff sued on behalf of a class that ultimately received a benefit, 176 N.J. at 565-66, Vincent did not

participate in the litigation as an advocate for plaintiff, the beneficiary of the trust. On the contrary, Vincent participated to protect his own interests and to defend allegations for breach of fiduciary duty against him individually. His victory on summary judgment was one of personal gain, as contemplated by Sunset Beach, 33 N.J. at 169-70, and did not yield any financial benefit for others. Thus, in denying Vincent's request for counsel fees, the judge properly concluded that this case does not fall within the fund-in-court exception.

We are also satisfied that the judge properly rejected Vincent's argument that the language of the trusts permitted a counsel fee award. The judge considered the trust language purporting to authorize an award of fees and found that the language permitted an award only "in administration of the trust," not the adversarial litigation at issue here.

Vincent further argues that fees are authorized here under N.J.S.A. 3B:14-23(*l*), which provides:

> In the absence of contrary or limiting provisions in the judgment or order appointing a fiduciary, in the will, deed, or other instrument or in a subsequent court judgment or order, every fiduciary shall, in the exercise of good faith and reasonable discretion, have the power:
>
> . . . .

> To employ and compensate attorneys for services rendered to the estate or trust or to a fiduciary in the performance of the fiduciary's duties[.]

However, the statute is inapplicable because it contemplates an award of counsel fees only in "the absence of contrary or limiting provisions" in the trust documents. N.J.S.A. 3B:14-23. Here, the limiting provisions in the trust documents appearing under the heading "Administrative Powers of Trustees" undermine Vincent's argument. Indeed, a trustee's role depends "primarily upon the terms of the trust." Branch v. White, 99 N.J. Super. 295, 306 (App. Div. 1968). The terms are determined by the settlor's intention at the time of the trust's creation. Coffey v. Coffey, 286 N.J. Super. 42, 53 (App. Div. 1995). Thus, "the primary inquiry must be to ascertain the intent of the settlor from the language of the instrument itself." In re Trust for the Benefit of Duke, 305 N.J. Super. 408, 418 (Ch. Div. 1995), aff'd, 305 N.J. Super. 407 (App. Div. 1997). Here, the trusts' language provides that the trustee is authorized to employ attorneys in the administration of the trusts, not defending against allegations of misconduct against him individually.

We are also convinced that the judge properly denied the fee application after finding the fees to be unreasonable and violative of RPC 1.5(a). In addition to the factors identified in RPC 1.5(a) that inform the assessment of

53

reasonableness, the application clearly included charges from the Delaware County court litigation, which was an entirely separate matter.

Vincent argues for the first time on appeal that the judge erred in failing to apply Pennsylvania law, which permits fees and costs incurred by a trustee to be chargeable to the trust. In support, Vincent relies on In re Browarsky's Est., 263 A.2d 365, 366 (Pa. 1970), where the Court stated that "whenever there is an unsuccessful attempt by a beneficiary to surcharge a fiduciary the latter is entitled to an allowance out of the estate to pay for counsel fees and necessary expenditures in defending himself [or herself] against the attack." (quoting In re Wormley's Est., 59 A.2d 98, 100 (Pa. 1948)).

This court "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). Because Vincent did not raise this issue before the trial judge and it is not jurisdictional in nature or implicates the public interest, we decline to consider the argument. Even if we considered the application under Pennsylvania law, both New Jersey and Pennsylvania require reasonableness in any award of

counsel fees.  RPC 1.5(a); see Browarsky's Est., 263 A.2d at 366 (noting estate was "obligated to pay the reasonable costs" of litigation).  Thus, even under Pennsylvania law, Vincent's application still fails as unreasonable because it included numerous charges associated with an entirely separate matter.

Vincent makes identical arguments in connection with his counsel fee application for the Ciardi law firm in A-1807-21.  However, the judge made no findings with respect to Ciardi's fee application and gave no reason for denying the application.  As a result, we are constrained to reverse and remand for the judge to make findings of fact and conclusions of law in accordance with Rule 1:7-4(a).

To the extent we have not addressed a particular argument, it is because the argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

In sum, we affirm the judge's order granting summary judgment to defendants on counts two and four through sixteen in A-1660-21.  However, we reverse and remand the judge's order granting summary judgment on counts one, three, and seventeen through nineteen in A-1660-21.  We affirm the judge's order denying Vincent's counsel fee application for the Davis law firm in A-

1808-21.  However, we reverse and remand the judge's order denying Vincent's fee application for the Ciardi law firm in A-1807-21.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION